## WHITE v. TREAT, Collector.

### (Circuit Court, S. D. New York. March 1, 1900.)

INTERNAL REVENUE—STAMP TAXES—"CALLS."

A "call" memorandum or writing, executed for a valuable consideration, giving the bearer the right to call upon the subscriber for certain shares of stock therein named, within a stated time and at a given price, is not an "agreement to sell" such stock, within the meaning of section 25 of the war revenue act of 1898, and is not subject to the stamp tax imposed on such agreements by that section. Such instrument, which merely gives an option, requires a further agreement to effect a sale, which agreement, or the sale when so effected, is clearly subject to the tax, and the statute contains no language indicating an intention to require the payment of the tax twice on a single sale.

This is an action brought to recover the sum of $604, being the amount alleged to have been paid by the plaintiff to the defendant under protest. This sum represents the value of 30,200 internal revenue stamps of the denomination of 2 cents each, which defendant, acting as a revenue officer, required plaintiff to affix to certain memoranda which evidenced the giving by plaintiff of an option to purchase from him in the future certain named stock at a given price. The transaction is one which, in the language of the stock market, is known as a "call." The parties duly filed with the clerk a stipulation in writing waiving a jury, and have agreed upon the facts, which agreement is adopted by the court as its finding.

Arthur M. King, Asst. U. S. Atty., for the motion.
Stephen B. White, opposed.

LACOMBE, Circuit Judge (after stating the facts as above). The several "calls" referred to in the complaint are all in the following form; varying only in date, in the name of the stock, and in the price at which they were offered:

"New York, May 18, 1899.

"For value received, the bearer may call on me on one day's notice, except last day, when notice is not required: One hundred shares of the common stock of the American Sugar-Refining Company, at one hundred and seventy-

five per cent., any time in fifteen days from date. All dividends for which transfer books close during said time go with the stock. Expires June 2, 1899, 3 p. m.

"[Signed]                                                                    S. V. White."

It is not disputed that, for each and every one of these signed offers to sell, a valuable consideration was paid to the plaintiff.

The provision of law under which the defendant required stamps to be affixed to these documents is found in section 25 of the act of June 13, 1898, to provide ways and means to meet war expenditures, usually called the "War Revenue Law of 1898." It is contained in the first paragraph of Schedule A, which prescribes the amount of stamp taxes applicable to the several documents therein set forth. The relevant parts of the paragraph read as follows:

"* * * On all sales, or agreements to sell, or memoranda of sales or deliveries or transfers of shares or certificates of stock * * * whether made upon or shown by the books of the * * * corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale whether entitling the holder in any manner to the benefit of such stock, or to secure the future payment of money or for the future transfer of any stock, on each hundred dollars of face value or fraction thereof, two cents: provided, that * * * in case of an agreement to sell * * * there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale, to which the stamp shall be affixed; and every * * * agreement to sell before mentioned shall show the date thereof, the name of the seller, the amount of the sale and the matter or thing to which it refers."

This long and intricate sentence is not easy of interpretation. It provides in the first place for "sales" of stock, and the first question to be answered is, what is a sale? It is a contract, an agreement, a meeting of the minds of two or more persons, founded upon a money consideration, by which the absolute or general property in the subject of the sale is transferred from the seller to the buyer. The latter acquires a property in the thing sold, which the other parts with. See authorities cited in 21 Am. & Eng. Enc. Law (1st Ed.) p. 446. This contract may provide for immediate delivery of the thing sold, or for delivery at some future time, for payment of the consideration at once, or upon delivery, or at some future time; but it must provide for a present transfer of the property in the thing sold, or it is not a sale at all. Inasmuch as a sale is a contract or agreement, it is frequently spoken of as a "contract of sale" or "an agreement of sale," —two phrases which, in law, mean no more and no less than the word "sale." Moreover, it is apparent that to a sale a buyer is as essential as a seller. No amount of offering to sell will make a contract of sale, until some one accepts the offer by agreeing to buy. The transaction evidenced by the memorandum above quoted is therefore not a "sale," nor a "contract of sale," nor an "agreement of sale." If some one entitled to make the call does, within the time limited, agree to buy the offered stock at the price named, then by a new contract, then first made, a sale is effected. Nevertheless the so-called call is itself a contract. It is an agreement, upon a sufficient consideration, to do a particular thing. There are two parties to it. The first agrees that he will do the particular thing if required so to do within a specified time by the other party, or by that other's transferee. The sec-

ond agrees that he will, upon the signing and delivery of the document, pay a stipulated sum of money to the first party. It is an agreement, and manifestly an "agreement to sell." It may be referred to as an "offer," or an "option," or a "call," or what not, but it is susceptible of no more exact definition than "an agreement to sell." Inasmuch, therefore, as the statute requires stamps to be affixed "on all sales, or agreements to sell," it would seem that these "calls" are within its provisions. But it must be remembered that statutes are frequently prepared under circumstances which preclude the careful weighing of words and the nice discrimination of technical meanings which the text writer may avail of, and so it is contended here that the phrase "agreements to sell" is used in this paragraph as a synonym for "sales"; being inserted, for abundant caution, to cover sales where, indeed, the minds of seller and buyer have met, but payment and delivery are postponed to some future day. What congress did mean by the use of that phrase in this paragraph is to be ascertained from the statute itself. In the very next paragraph, which deals with "products or merchandise," we find the phrase, "upon each sale, agreement of sale, or agreement to sell." This shows an acquaintance with the three terms, but does not necessarily imply that the two latter are used in contradistinction to each other. Having used two terms ("sale" and "agreement of sale") whose meaning is identical, the presence of the third term does not necessarily import an intention to use it with a different meaning. Undoubtedly it may be used, and is often used, in common, everyday speech, with sufficient looseness to cover an agreement of sale where delivery and payment are both postponed. Careful scrutiny of the paragraph now under construction seems to indicate, especially in the latter part, a use of the term with this secondary meaning. Thus, it is provided that "in cases of an agreement to sell" there shall be made and "delivered by the seller to the buyer a bill or memorandum of such sale," which shall "show the name of the seller" and the "amount of the sale." But in the case of "an agreement to sell," using that phrase with technical accuracy, there is no buyer, no seller, and no sale. It would seem, therefore, that the "agreement to sell" which congress had in mind was a different contract from that. Moreover, it would appear from the phrase in the paragraph just preceding the proviso that congress intended that the transactions and memoranda thereinbefore enumerated should be such as would entitle the holder "to the benefit of the stock," or "to secure the future payment of money" or the "future transfer of the stock." No mere agreement to sell would accomplish this. It might secure a future offer, which would itself secure nothing until by an acceptance an entirely new contract was created. Moreover, if congress has used the term "agreement to sell" in its strict legal sense, and has thereon imposed a tax calculated at 2 cents per $100, face value, of the stock referred to therein, there is a double tax on a single transfer of stock. When the holder of the agreement to sell requires the other party to offer the stock in conformity to its terms, and then accepts the offer, there is a meeting of their minds, constituting an agreement of sale or a sale,—

a contract independent of and different from the agreement to sell, and which by the express terms of the act is itself subject to stamp tax. There is no warrant in the statute for holding that an actual sale of stock shall escape the tax whenever such agreement of sale may happen to have been preceded by an agreement to sell. They are different contracts, each complete in itself, each capable of being taxed or of being left untaxed; but the result of both is to bring about but a single transfer of the stock from the original holder to the one who makes with him the contract of sale. For these reasons, it seems, to say the least, extremely doubtful whether congress intended to require stamps to be affixed to agreements to sell, which do not themselves effect or secure a transfer of stock. In view of the well-settled principle that duties are never imposed upon the citizen upon doubtful interpretations, the conclusion follows that the plaintiff was improperly required to affix stamps to documents like the one quoted above. Judgment is directed in favor of plaintiff.