### FLESHMAN v. McCLAIN, Collector.

(Circuit Court, E. D. Pennsylvania. June 13, 1900.)

No. 6.

1. INTERNAL REVENUE—STAMP TAXES—MODE OF COLLECTION.

A stamp duty imposed by an internal revenue law is collected by the government through the sale of the required stamps, and, in the absence of an express provision therefor, a collector is not authorized to collect such duty in any other manner.

2. SAME.

Where a person fails to make and deliver bills or memoranda of agreements made by him to sell stocks, and affix stamps thereto, as required by section 25 of the war revenue act of 1898, a collector has no authority to demand and collect from him the value of the stamps which would have been required had he complied with the law, the only remedy provided for a violation of the law being by prosecution, and fine or imprisonment; and a payment so enforced by a collector, under threat of suit, is illegally exacted, and may be recovered back.

F. B. Bracken, for plaintiff.
James M. Beck, for defendant.

J. B. McPHERSON, District Judge. This is a suit to recover from the collector of internal revenue a certain sum of money exacted by him from the plaintiff under the circumstances disclosed by the following extracts from the plaintiff's statement:

"The plaintiff, during the period from November 1, 1900, and December 25, 1899, was engaged in business in the city of Philadelphia as a stock, grain, and provision broker, under the trade name of J. B. Fleshman & Co., and in connection with said business negotiated for others sales of stocks listed on the New York Stock Exchange, and also bought and sold stocks on his own account; the larger part of the transactions in stock carried on by plaintiff being commonly known as 'marginal transactions.'

"During the said period plaintiff, in addition to other transactions in stock carried on by him, entered into certain agreements to buy from or sell shares of stocks to customers, in connection with which agreements the other parties thereto deposited with plaintiff in each case a certain amount of money, proportioned to the amount of stock purchased or sold by way of margin. In no instance were any share or shares of stock delivered either by or to the plaintiff in connection with said agreements, and it was generally understood between the plaintiff and the other parties to said agreements that no actual delivery of the stock would take place.

"At the time when said agreements were entered into memoranda thereof were issued on forms as follows, marked, respectively, 'A' and 'B'; Form A being used in all cases wherein the plaintiff agreed to sell stock to customers, and Form B being used in all cases wherein the plaintiff agreed to buy stocks from customers.

### " 'Form A.

" 'J. B. Fleshman & Co., Brokers and Dealers in Stocks, Cotton, Grain, and Provisions, 1406 South Penn Square.

" 'Mr. ————.                                   Philadelphia, ————, 1900.

" 'Stocks deliverable and receivable on three days' notice in New York; grain and provisions, in Chicago, Ill.

" 'It is agreed that whenever the deposit is exhausted all stocks and bonds bought of or by us for you, or held as collateral security, may be sold without further notice, and without incurring any liability for difference in value after such sale.

" 'Not transferable.

#### " 'Bought of J. B. Fleshman & Co.

" 'Amount.           Article.           Price.           Received on Account.'

### " 'Form B.

" 'J. B. Fleshman & Co., Brokers and Dealers in Stocks, Cotton, Grain, and Provisions, 1406 South Penn Square.

" 'Mr. ————.                                   Philadelphia, ————, 1900.

" 'Stocks deliverable and receivable on three days' notice in New York; grain and provisions, in Chicago, Ill.

" 'It is agreed that whenever the deposit is exhausted all stocks and bonds sold to or by us for you, or held as collateral security, may be bought without further notice, and without incurring any liability for difference in value after such sale.

" 'Not transferable.

#### " 'Sold to J. B. Fleshman & Co.

" 'Amount.           Article.           Price.           Received on Account.'

"At the time said memoranda were issued documentary stamps were attached thereto in payment of tax, to which plaintiff regarded said agreements to sell stock as being subject, under the provisions of Schedule A of the said war revenue act, namely, at the rate of two cents on each one hundred dollars of par value of the stock referred to in said agreements.

"The aggregate of the shares of stock included in said agreements, in connection with which memoranda were issued on Form A, above described, was 151,-497 shares, and the tax paid thereon by stamps as aforesaid amounted to $3,-029.94, and the aggregate of the shares of stock included in said agreements, in connection with which memoranda were issued on Form B, above described, was 75,748 shares, and the tax paid thereon by stamps as aforesaid was $1,514.96.

"As hereinabove stated, no delivery of stock was actually made either by or to the plaintiff in connection with said agreements, and the only memoranda issued at any time in connection with said agreements were the memoranda hereinabove referred to as having been issued with documentary stamps attached thereto as aforesaid.

"In the case of each of said agreements, a settlement was made by plaintiff with the other party thereto upon demand of the latter by paying to him in cash a sum equal to the difference between the market value of the stock embraced in said agreement at the date thereof and the market value of said stock at the time of said settlement. Upon receiving payment from the plaintiff upon this basis, the other party to each of said agreements surrendered to plaintiff the memorandum of the character hereinabove described, held by him as evidence thereof, and the transaction was thus regarded as finally closed.

"The stock embraced in each of said agreements was never actually in possession of either of the parties thereto, and settlement under each of said agreements by payment of differences, as above described, was made and accepted by the parties as terminating all liability thereunder, and as relieving the one party (the vendor) from the obligation to specifically deliver the stock, and the other (the vendee) from the obligation to pay in full the agreed price therefor.

"But, notwithstanding that settlement under said agreements was made in the manner as described, the defendant, as collector of internal revenue aforesaid, pursuant to a treasury decision known as 'Treasury Decision No. 20,274,' a copy of which is hereto attached, nevertheless held that in contemplation of law, under the aforesaid state of facts, there was necessarily incident to each of said settlements under aforesaid agreements an agreement to resell the stock included therein, which agreement to resell was subject to tax, under Schedule A of said war revenue act, at the rate of two cents on each one hundred dollars of par value of stock.

"Proceeding upon this theory, and without further warrant, the said collector of internal revenue collected from the plaintiff the aforesaid sum of four thousand five hundred and forty-four and $90/100$ dollars as a tax arising from the settlements under said agreements to sell stock, made in the manner hereinabove described, namely, by the payment of differences."

The collection was made as follows:

"On the 2d day of March, 1900, the defendant, acting under and by virtue of the authority conferred upon him as collector of internal revenue aforesaid by the laws of the United States, made demand upon the plaintiff for the payment by the plaintiff to him as said collector of the sum of four thousand five hundred and forty-four and $90/100$ dollars as a tax alleged by defendant to be due from plaintiff to the United States, under the provisions of an act of congress approved June 13, 1898, and known as the 'War Revenue Act of 1898.'"

"And, further, defendant informed plaintiff that, if his demand for the payment of said sum was not complied with, proceedings for the collection of the same would be instituted against plaintiff under the internal revenue laws of the United States.

"In consequence of aforesaid demand and in order to avoid the proceedings with which he was threatened by defendant, the plaintiff did on the said 2d day of March, 1900, pay into the hands of defendant, as collector aforesaid, the sum of four thousand five hundred and forty-four and $90/100$ dollars, protesting to defendant at the time of said payment that the collection of the said sum of money from him as a tax due under the laws of the United States was wholly illegal and unwarranted, the plaintiff not being liable to the United States for taxes in any sum whatsoever."

On the same day the plaintiff applied to the commissioner of internal revenue, under section 3226 of the Revised Statutes, praying to have the money refunded, and brought this suit after the commissioner had rejected the application.

In support of the demurrer, the government has chiefly relied upon the character of the plaintiff's transactions,—the dealings appearing to have been of the "bucket-shop" variety,—arguing that a contract to resell is necessarily implied therein, and that each settlement between the plaintiff and his customers should be treated as if such a contract had actually been put into writing and delivered. In my opinion, however, the case must be decided against the government upon another, and a controlling, point, namely, the collector's lack of authority to demand a money payment from the plaintiff. I think there was no lawful warrant for the demand, and therefore that the plaintiff is entitled to recover the money illegally collected by the defendant.

Assuming the government's position to be correct,—that each of the plaintiff's transactions, to be complete, should have embraced a written contract to resell, duly executed, stamped, and delivered,—and assuming, further, that the war revenue act was violated because such contracts were not executed and stamped, the question still remains, did such violation authorize the collector to demand

from the plaintiff a sum of money in cash? As it seems to me, this question must be answered in the negative. The taxes under consideration are stamp taxes upon certain agreements, and taxes of this kind are not sums of money assessed annually, or for any other period, against either the citizen or his property. The remedies ordinarily used for the collection of such sums are not available to enforce the use of stamps under the war revenue act, because these remedies are not given by the statute, and are not implied from the nature of the citizen's obligation. Stamp taxes upon agreements are charges by way of excise, and the government collects the charge by selling the necessary stamps, and requiring them to be affixed to the material evidence of the contract. If this requirement is disobeyed, the statutory punishment is fine or imprisonment, coupled with the suspension of the evidential value of the written instrument; but nowhere in the act is there to be found any provision empowering a collector to distrain, or sue for, or collect in any other manner the money that ought to have been paid to the government for the stamps that were not used. Not being provided for by the statute, the course pursued by the defendant—demanding and collecting cash under threat of suit—was without authority, and the exaction was therefore unlawful. Congress possessed the sole power to authorize this tax, and the sole power to prescribe the means by which it should be collected. Meriwether v. Garrett, 102 U. S. 515, 26 L. Ed. 197. No remedy by suit is given or implied by the act in question, nor is there to be discovered any authority to demand and accept money in lieu of the stamps that are required by law to be affixed.

The attorney general has recently shown clearly, in an opinion published in 3 Treas. Dec. 24, that the stamp taxes imposed by Schedule A contemplate an instrument or paper to which the stamp can be affixed; and has pointed out, further, that the act requires the making of certain instruments that are liable to be taxed, while it leaves to the option of the parties the making of other instruments that (if made) are also taxable. A penalty for failure to obey this statutory requirement is provided, but I find no other remedy in the act.

Moreover, even if written agreements to resell ought to have been made by the plaintiff or his customers, the obligation rested upon the plaintiff only as to some of the agreements in question. In many instances he was not the seller, but the buyer, while Schedule A requires a bill or memorandum of sale to be made and delivered "by the seller" to the buyer. Upon any theory of the obligation imposed by the act, therefore, the plaintiff seems to have a good claim for at least $3,029.94.

But, for the reason already given, I think the whole claim is good. In the unreported case of White v. Treat (decided by Judge Lacombe in March of this year; C. C.) 100 Fed. 290, it appears that Treat, the collector, required White, who had sold numerous "calls," or written options to buy stock at a certain price, to purchase stamps and affix them to the respective calls. This method of procedure does not seem to have been objected to, and it may perhaps have

been justified. If the calls ought to have been stamped, White was not likely to object to the collector's demand that the stamps be put on, since he was already liable to indictment, and might be obliged, under section 7 of the act, to pay a maximum fine of $100 for each offense; but, if he had refused to affix the stamps, I am unable to discover any other remedy than the proceeding by indictment. In like manner, Fleshman would have been liable to indictment if, and so far as, he (and not his customers) was bound to affix a second stamp to the agreements between his customers and himself upon the completion of the game in which they were engaged, and if he failed so to do. If, and so far as, he was bound to execute and deliver an agreement to resell, and failed to do so, Schedule A itself provides a penalty of fine or imprisonment for such omission. He could not have been sued at law to recover the face value of the stamps alleged to have been necessary, and the exaction of payment under a threat of suit was therefore unlawful.

The demurrer is overruled.