McCLAIN, Collector, v. FLESHMAN.

(Circuit Court of Appeals, Third Circuit. February 21, 1901.)

No. 21.

**1. INTERNAL REVENUE—STAMP TAXES—AGREEMENTS TO SELL STOCKS.**

A stockbroker by his course of business entered into agreements with his customers to buy or sell stocks at a fixed price for future delivery. Each of such agreements was evidenced by a written memorandum properly stamped in accordance with Schedule A of the war revenue act of 1898, which enumerates, as subject to stamp taxes imposed by the act, "all sales or agreements to sell or memoranda of sales or deliveries or transfers" of stock. The transactions were purely speculative, conducted on margins, and no actual delivery of stocks was contemplated by the parties, but settlement was made by the payment of differences and the surrender of the written memoranda. *Held*, that such settlements did not involve agreements for a resale of the stocks, requiring new memoranda to be made and stamped under such provision; the courts having no authority to infer such agreements, contrary to the fact, for the purpose of extending the provisions of the statute to transactions not within its terms.

**2. SAME—MODE OF COLLECTION.**

Where a person fails to make and deliver bills or memoranda of agreements made by him to sell stocks and affix stamps thereto as required by section 25 of the war revenue act of 1898, a collector has no authority to demand and collect from him the value of the stamps which would have been required had he complied with the law,—the only remedy provided for a violation being by prosecution and fine or imprisonment; and a payment so enforced by a collector under threat of suit is illegally exacted, and may be recovered back.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 105 Fed. 610.

Wm. M. Stewart, Jr., for plaintiff in error.

F. B. Bracken, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. This is an appeal from the judgment of the circuit court of the United States for the Eastern district of Pennsylvania entered in favor of J. B. Fleshman & Co. upon a demurrer to a statement of claim filed by him. The suit was brought to recover from the collector of internal revenue the sum of $4,544.90 exacted by said collector from the plaintiff. As disclosed by the statement of claim, the appellee, Fleshman, being a stockbroker, entered into various agreements with customers, whereby in some instances he agreed to sell, and in others to buy, shares of stock. Each agreement was evidenced by a written memorandum, to which, at the time it was issued, tax stamps were affixed, in accordance with the provisions of the war revenue act of 1898, imposing a stamp tax on sales or agreements to sell shares of stock. The stock embraced in these agreements was not at any time in the possession of either of the parties thereto. No delivery of stock was made in accordance with the

terms of the agreements, and none was contemplated by the parties when they were entered into; the transactions being purely speculative, and the intention being to settle by the payment of differences. Settlement in each case was in fact made in this manner,—Fleshman paying to the other party to the agreement the difference between the agreed price and the market price at the time of settlement, the party receiving payment then surrendering to Fleshman the original memorandum issued in connection with the transaction; but no new paper or instrument of any kind was issued by either of the parties. The commissioner of internal revenue held that these settlements necessarily involved agreements to resell the stock, in connection with which new memoranda, bearing tax stamps, should have been issued, as provided by the act of June 13, 1898, Schedule A, and, this not having been done, Fleshman was liable to a tax equal to the value of the tax stamps which should have been attached to such memoranda if they had been issued.

The original memoranda evidencing the agreements of purchase or sale had, as already stated, proper stamps attached thereto; and the first question raised by the demurrer was whether the subsequent settlements which in due course of such business were made between the appellee and his customers, by which "differences" were paid and received according to the authorized quotation of the New York stock market, should have been evidenced by memoranda to which stamps appropriate to contracts of sale or purchase of shares of stock should have been attached.

Section 6 of the internal revenue act, above referred to, provides as follows:

"Sec. 6. That on and after the first day of July, 1898, there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this act, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, shall be written or printed by any person or persons, or party who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued, the several taxes or sums of money set down in figures against the same, respectively, or otherwise specified or set forth in the said schedule."

Schedule A, therein referred to, is headed, "Stamp Taxes," and the provision with which we are concerned is as follows:

"On all sales, or agreements to sell, or memoranda of sales or deliveries or transfers of shares or certificates of stock in any association, company, or corporation, whether made upon or shown by the books of the association, company, or corporation or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, or to secure the future payment of money, or for the future transfer of any stock, on each hundred dollars of face value or fraction thereof, two cents."

A brief analysis of the transactions in question will, we think, clearly determine the applicability thereto of these provisions of the law. The original contract was a contract in which the appellees agreed either to sell to or buy from their customers a certain num-

ber of shares of stock, and provided that these shares should be receivable or deliverable within a certain number of days. The purely speculative character of the transaction is attested by the fact that no delivery or transfer of shares was contemplated, and that in each case a payment on account was made by the customer, whether it be a transaction of sale or of purchase on his part. This payment is receipted for in the memorandum in every case, and is known in stockbrokers' parlance as a "margin." But for the purposes of this case we are treating the transactions evidenced by the memoranda as valid agreements of sale or purchase. As such, they have had affixed to them the stamps called for in Schedule A. When, however, these transactions came to be closed or "rounded up," no stocks were demanded or delivered on either side, or expected to be, but a payment was made or received by one side or the other according as the quotations of the New York stock market showed that within a given time the stocks had risen or fallen. This payment represented the difference between the prices mentioned in the memoranda of agreement at which the stocks were bought or sold, and that at which they were at the time given quoted in the said stock list. No sale or agreement to sell or memoranda of sale or delivery or transfer of shares or certificates of stock were necessary or required or appropriate in or to such a settlement. It was, as contended for by the appellees, either the closing of a purely wagering transaction, or the adjustment and payment of damages resulting to one of the parties by reason of the breach of contract on the part of the other in failing to deliver the stock when demanded, or receive it when tendered, as provided by the agreement. When this settlement, by the payment or receipt of an amount of money representing the difference alluded to, was made, the transaction was closed, and the memoranda of sale or purchase were surrendered. No new transaction of purchase or sale being required, there is no memorandum or other document representing such supposititious sale or purchase requisite, and no legal obligation to make such rested upon the parties, or either of them. The parties chose to stop short of the point where such a document, requiring to be so stamped, would be necessary. Their right to so stop cannot be gainsaid under any correct construction of the law in question. No paper or instrument properly evidencing the settlement of the stock transactions as described above and set forth in the statement of claim, even if drawn up, would be included in the designation or description of taxable instruments in Schedule A of the revenue act. We are of opinion, therefore, that the imposition of tax by reason of these transactions was, for the reasons stated, wholly unwarranted. That the dealings in question are gambling transactions cannot affect our view of the law. If congress desires to pursue them with exactions in the way of tax, it may rightfully do so; but, however desirable such penalty or taxation may appear to be, it should not be inflicted or imposed by a strained judicial construction.

The court below based its opinion overruling the demurrer upon another ground, equally controlling and decisive of the case in hand. The reasoning of the court on this point is so full and clear that we

prefer to quote and adopt it as our own, rather than attempt to paraphrase it. It is as follows:

"Assuming the government's position to be correct,—that each of the plaintiff's transactions, to be complete, should have embraced a written contract to resell, duly executed, stamped, and delivered,—and assuming further that the war revenue act was violated because such contracts were not executed and stamped, the question still remains, did such violation authorize the collector to demand from the plaintiff a sum of money in cash? As it seems to me, this question must be answered in the negative. The taxes[5] under consideration are stamp taxes upon certain agreements, and taxes of this kind are not sums of money assessed annually, or for any other period, against either the citizen or his property. The remedies ordinarily used for the collection of such sums are not available to enforce the use of stamps under the war revenue act, because these remedies are not given by the statute, and are not implied from the nature of the citizen's obligation. Stamp taxes upon agreements are charges by way of excise, and the government collects the charge by selling the necessary stamps and requiring them to be affixed to the material evidence of the contract. If this requirement is disobeyed, the statutory punishment is fine or imprisonment, coupled with the suspension of the evidential value of the written instrument; but nowhere in the act is there to be found any provision empowering a collector to distrain or sue for, or collect in any other manner, the money that ought to have been paid to the government for the stamps that were not used. Not being provided for by the statute, the course pursued by the defendant—demanding and collecting cash under threat of suit—was without authority, and the exaction was therefore unlawful. Congress possessed the sole power to authorize this tax, and the sole power to prescribe the means by which it should be collected. Meriwether v. Garrett, 102 U. S. 515, 26 L. Ed. 197. No remedy by suit is given or implied by the act in question, nor is there to be discovered any authority to demand and accept money in lieu of the stamps that are required by law to be affixed. The attorney general has recently shown clearly, in an opinion published in 3 Treas. Dec. 24, that the stamp taxes imposed by Schedule A contemplate an instrument or paper to which the stamp can be affixed, and has pointed out further that the act requires the making of certain instruments that are liable to be taxed, while it leaves to the option of the parties the making of other instruments that, if made, are also taxable. A penalty for failure to obey this statutory requirement is provided, but I find no other remedy in the act. Moreover, even if written agreements to resell ought to have been made by the plaintiff or his customers, the obligation rested upon the plaintiff only as to some of the agreements in question. In many instances he was not the seller, but the buyer, while Schedule A requires a bill or memorandum of sale to be made and delivered 'by the seller' to the buyer. Upon any theory of the obligation imposed by the act, therefore, the plaintiff seems to have a good claim for at least $3,029.94. But, for the reason already given, I think the whole claim is good. In the case of White v. Treat (C. C.; decided by Judge Lacombe in March of this year) 100 Fed. 290, it appears that Treat, the collector, required White, who had sold numerous 'calls' or written options to buy stock at a certain price, to purchase stamps and affix them to the respective calls. This method of procedure does not seem to have been objected to, and it may, perhaps, have been justified. If the calls ought to have been stamped, White was not likely to object to the collector's demand that the stamps be put in, since he was already liable to indictment, and might be obliged, under section 7 of the act, to pay a maximum fine of $100 for each offense; but, if he had refused to affix the stamps, I am unable to discover any other remedy than the proceeding by indictment. In like manner, Fleshman would have been liable to indictment if, and so far as, he, and not his customers, was bound to affix a second stamp to the agreements between his customers and himself upon the completion of the game in which they were engaged, and if he failed so to do. If, and so far as, he was bound to execute and deliver an agreement to resell, and failed to do so, Schedule A itself provides a penalty

of fine or imprisonment for such omission. He could not have been sued at law to recover the face value of the stamps alleged to have been necessary, and the exaction of payment under a threat of suit was therefore unlawful."

We are of opinion, therefore, that on both the grounds stated the judgment of the court below should be affirmed, and it is so ordered.