UNITED STATES v. CHAMBERLIN et al.

(Circuit Court of Appeals, Eighth Circuit. October 17, 1907.)

No. 2,422.

1. INTERNAL REVENUE—STAMP TAXES ON WRITTEN INSTRUMENTS — MODE OF ENFORCEMENT.

The United States cannot maintain an action of debt for the recovery of stamp taxes owing on a deed of conveyance under War Revenue Act June 13, 1898, c. 448, § 25, Schedule A, 30 Stat. 457 [U. S. Comp. St. 1901, p. 2299], by reason of the failure to affix the required stamps thereto. There being no express authority in the statute for such a proceeding, the means of enforcing payment of the tax are limited to the penal provisions contained therein.

2. TAXATION—"DEBT" DEFINED—TAXES NOT DEBTS.

A tax is not a "debt" within the ordinary meaning of the term, nor in such sense that an action of indebitatus assumpsit may be maintained for its collection, unless expressly authorized by statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1185.

For other definitions, see Words and Phrases, vol. 2, pp. 1864–1887; vol. 8, p. 7628.]

Hook, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Colorado.

Ralph Hartzell, Asst. U. S. Atty. (Earl Cranston, U. S. Atty., and Ernest Knaebel, Sp. Asst. U. S. Atty., on the brief), for plaintiff in error.

O. L. Dines (E. E. Whitted, on the brief), for defendants in error.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. In 1905 the plaintiff in error, the United States of America, instituted this suit in the United States District Court for the District of Colorado, to recover of the defendants in error, as executors of the will of Winfield Scott Stratton, the sum of $4,883, the amount of revenue stamps alleged to be owing by said estate on a deed of conveyance made by said Stratton on the 23d day of May, 1899, conveying to Stratton's Independence Limited, a corporation, certain mining property located in the Cripple Creek mining district of Colorado. The petition alleged that the consideration expressed in the deed was $4,850,000, on which revenue stamps were placed amounting to $4,850; whereas, the true and actual consideration for the conveyance was $9,733,000, leaving the amount of stamps due $4,883. The court below sustained a demurrer to this petition. To reverse this judgment the United States prosecutes this writ of error.

The question for decision is, can the government maintain the action of indebitatus assumpsit for the recovery of such tax? The tax claimed arose under what is popularly known as the "Spanish War tax," provided for by Act Cong. June 13, 1898, c. 448, 30 Stat. 448 [U. S. Comp. St. 1901, p. 2284 (2 Supp. Rev. St. No. 8, 1897–1899)]. Under Schedule A it is provided that on a deed conveying lands, ten-

ements, or other realty, "the purchaser or purchasers, or any other person or persons, by his, her, or their direction, when the consideration or value exceeds one hundred dollars and does not exceed five hundred dollars," shall place a stamp of 50 cents, and for each additional $500 or fractional part thereof in excess of $500, 50 cents. Section 25 of the act provides:

"That the Commissioner of Internal Revenue shall cause to be prepared for the payment of the taxes prescribed in this act suitable stamps denoting the tax on the document, article or thing to which the same may be affixed."

The act specifies what the penalty and consequences shall be for a failure to attach to the instrument the required stamps. Section 7 declares:

"That if any person or persons shall make, sign, or issue, or cause to be made, signed, or issued, any instrument, document, or paper of any kind or description whatsoever, without the same being duly stamped for denoting the tax hereby imposed thereon, or without having thereon an adhesive stamp to denote said tax, such person or persons shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not more than one hundred dollars, at the discretion of the court, and such instrument, document, or paper, as aforesaid, shall not be competent evidence in any court."

Section 10:

"That if any person or persons shall make, sign, or issue, or cause to be made, signed, or issued, or shall accept or pay, or cause to be accepted or paid, with design to evade the payment of any stamp tax, any bill of exchange, draft, or order, or promissory note for the payment of money, liable to any of the taxes imposed by this act, without the same being duly stamped, or having thereupon an adhesive stamp for denoting the tax hereby charged thereon, he, she, or they shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding two hundred dollars, at the discretion of the court."

Section 13:

"That any person or persons who shall register, issue, sell, or transfer, or who shall cause to be issued, registered, sold, or transferred, any instrument, document, or paper of any kind or description whatsoever mentioned in Schedule A of this act, without the same being duly stamped, or having thereupon an adhesive stamp for denoting the tax chargeable thereon, and canceled in the manner required by law, with intent to evade the provisions of this act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding fifty dollars, or by imprisonment not exceeding six months, or both, in the discretion of the court; and such instrument, document, or paper, not being stamped according to law, shall be deemed invalid and of no effect. [The proviso of this section authorizes the subsequent validation of the instrument by placing the stamps thereon.] But no right acquired in good faith before the stamping of such instrument, or copy thereof, as herein provided, if such record be required by law, shall in any manner be affected by such stamping as aforesaid."

Section 14:

"That hereafter no instrument, paper, or document required by law to be stamped, which has been signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof, shall be recorded or admitted, or used as evidence in any court until a legal stamp or stamps, denoting the amount of tax, shall have been affixed thereto, as provided by law. * * *"

Section 15:

"That it shall not be lawful to record or register any instrument, paper, or document required by law to be stamped unless a stamp or stamps of the proper amount shall have been affixed and canceled in the manner prescribed by law; and the record, registry, or transfer of any such instruments upon which the proper stamp or stamps aforesaid shall not have been affixed and canceled as aforesaid shall not be used in evidence."

These are the only provisions of the statute respecting the manner of obtaining the revenue from such conveyances, and they contain the only remedial provisions for the enforcement of payment. The language of section 25 clearly enough indicates that "the payment of the taxes prescribed in this act" shall be by "suitable stamps denoting the tax on the document," etc. These were to be prepared by the Commissioner of Internal Revenue, and when bought from the local collector they were to be affixed to the instrument by the vendor or the vendee. No antecedent assessment was provided for or contemplated in respect of this character of tax.

Reliance for the enforcement of the payment of the tax claimed in this case as a debt owing to the government is placed principally upon the decision in Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80. The tax in that case was based upon Internal Revenue Act July 13, 1866, c. 184 (14 Stat. 98), which levied a tax of 5 per cent. on bank dividends. The tax was to be paid in money by the bank on the stock of the shareholder. The list or return was required to be made and rendered to the assessor by the bank on or before a given date, in which any dividends or sums of money became due or payable, and the president, cashier, or treasurer of the bank was required to annex thereto a declaration, under oath, in form and manner as prescribed by the Commissioner of Internal Revenue, that the same contained a true and faithful account of the taxes aforesaid; and for any default in making or rendering such list or return, with such declaration annexed, the defaulting bank should forfeit as a penalty the sum of $1,000, and for failure to make or render the list or return, or for any default in the payment of the tax as required, the assessment and collection of the tax and penalty shall be in accordance with the general provisions of law in other cases of neglect and refusal. From which it is apparent that the amount of the tax to be paid was assessed on a particular fund—a dividend in favor of an ascertained beneficiary—and payment of the amount so assessed was to be made in money by the bank to the collector of internal revenue. While the act provides for the imposition of a penalty in the nature of a forfeiture, on default of the bank in performing the duties imposed upon it, the act went further and expressly declared:

"That it shall be the duty of the collectors aforesaid, or their deputies, in their respective districts, and they are hereby authorized, to collect all the taxes imposed by law, however the same may be designated, and to prosecute for the recovery of any sum or sums which may be forfeited by law; and all fines, penalties, and forfeitures which may be incurred or imposed by law, shall be sued for and recovered, in the name of the United States, in any proper form of action, or by any appropriate form of proceeding, qui tam or otherwise, before any circuit or district court of the United States for the district within which said fine, penalty, or forfeiture may have been incurred,

or before any other court of competent jurisdiction. And taxes may be sued for and recovered, in the name of the United States, in any proper form of action before any circuit or district court of the United States within which the liability to such tax may have been or shall be incurred, or where the party from whom such tax is due may reside at the time of the commencement of said action. But no such suit shall be commenced unless the Commissioner of Internal Revenue shall authorize or sanction the proceedings."

With the greatest respect for the eminent jurist who wrote the opinion in the Savings Bank Case, we submit that what is said in the course of the opinion respecting the exemption of the general government from established recognized common-law rights of action and limitations upon the character of action permissible to it, respecting its right to treat a tax as a debt recoverable in the form of assumpsit indebitatus, was quite obiter dictum, as the statute imposing the tax in question expressly declared that it could be recovered by suit at law, and as disclosed in the facts of the case the Commissioner of Internal Revenue had sanctioned the proceeding. The statute itself was an all-sufficient authority for the maintenance of the suit. The tax itself became a charge upon a particular fund, payable in money, directly to the collector of internal revenue, and possessed none of the qualities of a duty to be paid in stamps. In view of the express provision of the statute providing for the recovery of such a tax by suit, it ought not to be said that it was the mind of the court in the Savings Bank Case to overturn the hitherto generally recognized rule of law that a tax is not regarded as a debt. In Lane County v. Oregon, 7 Wall. 71, 79, 80, 87, 19 L. Ed. 101, the Chief Justice, delivering the unanimous opinion of the court, speaking of the clause of the Constitution giving to Congress the power to lay and collect taxes, said:

"What, then, is its true sense? The most obvious, and, as it seems to us, the most rational, answer to this question, is that Congress must have had in contemplation debts originating in contract or demands carried into judgment, and only debts of this character. This is the commonest and most natural use of the word. Some strain is felt upon the understanding when an attempt is made to extend it so as to include taxes imposed by legislative authority, and there should be no such strain in the interpretation of a law like this. We are more ready to adopt this view, because the greatest of English elementary writers upon law, when treating of debts in their various descriptions, give no hint that taxes come within either, while American state courts of the highest authority have refused to treat liabilities for taxes as debts, in the ordinary sense of that word, for which actions of debt may be maintained."

Then, quoting from City of Camden v. Allen, 26 N. J. Law, 398:

"A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government upon its citizens, or subjects, for the support of the state. It is not founded on contract or agreement. It operates in invitum. A debt is a sum of money due by certain and express agreement. It originates in and is founded upon contracts, express or implied."

In Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197, the opinion was written by Mr. Justice Field, who dissented in the Savings Bank Case, supra. He asserted broadly that:

"Taxes are not debts. It was so held by this court in the case of Oregon v. Lane County, reported in 7 Wall. 71, 19 L. Ed. 101."

It is true that that was not a suit either by the United States or by the state of Tennessee; but it was the assertion of the sovereignty of the state through the legislative authority, and the whole reasoning of the court was that both the levying and collecting of the tax are legislative matters, and are not judicial, and therefore he said:

"Having the sole power to authorize the tax, it must equally possess the sole power to prescribe the means by which the tax shall be collected and to designate the officers through whom its will shall be enforced. * * * In the distribution of the powers of government in this country into three departments, the power of taxation falls to the legislative."

It is a significant fact that in the dissenting opinion Mr. Justice Strong, who wrote the opinion in the Savings Bank Case, reasserted that:

"By the lawful assessment and levy of a tax the taxpayer becomes a debtor to the municipality, and the debt may be recovered, like other debts, by a suit at law, or, when it is a lien, by a bill in equity."

In Thompson v. Allen County (C. C.) 13 Fed. 99, Mr. Justice Matthews, referring to the Meriwether Case, said:

"I am constrained to conclude that it was decided by the spirit and logic of that case that the collection of a public tax as much belongs to the authority of the state as its levy and assessment, and the reasons which forbid a court to supply the latter apply with equal force to the former."

In Crabtree v. Madden, 54 Fed. 426, 4 C. C. A. 408, the tax sought to be collected was imposed by the Indian tribes. This court, speaking through Judge Sanborn, after asserting that the authority imposing the tax had equal power to prescribe the remedies and designate the officers to collect it, asserted the proposition that actions at law for the collection of taxes, as a rule, are unauthorized, and that the general rule is that where remedies are provided, and such an action is not named as one of them, a common-law action to recover the tax would not lie, even in the courts of the sovereignty which had imposed them. He further said:

"The counsel for plaintiffs attempts to escape this conclusion by the argument that this tax is a debt; that it arises upon an implied contract; that the court has jurisdiction to enforce such contracts, and hence of this action. This position is not tenable. Taxes are not debts. They do not rest upon contract, express or implied. They are imposed by the legislative authority, without the consent and against the will of the persons taxed, to maintain the government, protect the rights and privileges of its subjects, or to accomplish some authorized special purpose. They do not draw interest, are not subject to set-off, and do not depend for their existence or enforcement upon the individual assent of the taxpayers."

It may be conceded that a tax imposed in favor of the government, whether by assessments or other means, having been ascertained, so as to become fixed either as a lien on specific property or as a claim in personam, no matter what technical name may be given to the suit, the government would be afforded a remedy through its courts for the enforcement of its payment, unless it appears from the statute that in respect of the particular tax it was not contemplated that it should be collected by a suit at law. As a means for the enforcement of the purchase of the tax stamps, which was the only mode of pay-

ment prescribed by the act, the statute subjected the derelict to prosecution as a misdemeanant and to a fine of $100, and in addition thereto it disentitled the deed to admission of record under the recording statutes of the state and rendered it inadmissible in evidence in the courts. On the face of the act these penalizing provisions were deemed by Congress as far as it cared to go toward the enforcement of the payment of this tax.

It is not persuasive to say that the penalty and disqualifying incidents imposed might not be effective to compel the purchase of a large amount of stamps. While the penal sum imposed as a fine or the imprisonment might not be a sufficient deterrent against evasions of the tax, the scandal of a conviction under indictment or criminal information and the other consequences attached for the nonaffixing of the stamps were most serious. The nonadmission of the deed of conveyance as a muniment of title might be most disastrous to the grantee in the event of the interposition of the creditors of the grantor or subsequent grantees or mortgagees. In the event of a judicial inquiry, where the rights of the grantee were at issue, the inadmissibility of his deed in evidence, for the lack of stamps, might be ruinous to him. It is sufficient, however, to say that Congress in framing the statute deemed the liabilities and disabilities imposed adequate enough to enforce compliance. The judicial branch of the government has no right to challenge the legislative discretion. The established rule of the common law is that where a legislative act creates a new right, or imposes a new burden, and specifies certain remedies in the form of penalties and the like, the prescription is exclusive of any other remedy.

It is a noteworthy fact that in the matter of "Legacies and Distributive Shares of Personal Property" (pages 798, 799, of the act of 1898), where the tax is ascertained from schedules and constitutes a lien upon the decedent's estate, on refusal of the administrator or executor to pay, it is provided that:

"The collector shall commence appropriate proceedings before any court of the United States, in the name of the United States, against such person or persons as may have the actual or constructive custody or possession of such property or personal estate, or any part thereof, and shall subject such property or personal estate, or any portion of the same, to be sold upon the judgment or decree of such court," etc.

No like provision was made in respect of the failure to place upon any written instrument the required stamps.

The contention on behalf of the government is that this suit is maintainable by reason of section 31 of the act, which declares that:

"All administrative, special or stamp provisions of law, including the laws in relation to the assessment of taxes, not heretofore specifically repealed, are hereby made applicable to this act."

In order to make said section effective to the end desired, it is further claimed that it had reference to and incorporated into the statute the provisions of section 9 of the internal revenue act of 1866, authorizing suit by the government to recover taxes (which has hereinbefore been quoted), which now constitutes section 3213, Rev. St.

U. S. 1878. This, it must be conceded, would be a remarkable extension of the ordinary import of the terms and words employed in said section 31. It occurs under the heading "Legacies and Distributive Shares of Personal Property," declaring that estates in descent and distribution shall be taxed, and providing the amount and the manner of ascertaining the same. As the stamp tax in respect of deeds of conveyance imposed by the war revenue acts of 1864 and 1866 were repealed by Act June 6, 1872, c. 315, 17 Stat. 256, the term "stamp provisions" could have no reference to provisions pertaining to stamps on deeds of conveyance, for those had been "heretofore specially repealed." But there were "laws in respect to the assessment of taxes" which had not hitherto been repealed, such as inheritance taxes, legacies, and personal property, and assessments on incomes.

The term "special"—that is, special provisions of law—certainly did not point out said section 3213, Rev. St. 1878, supra, as that is a general law applicable to all taxes collectible by suit. Its natural import is that it refers to some special provisions of some act which might not have been specified in the particular act. But it can have no reference to provisions respecting the payment of taxes by stamps, as the act of 1898 presents a plenary system, with definite details as to the manner of their payment, and prescribes the remedy for its enforcement.

The only remaining term, therefore, in section 31, upon which the government's contention can be hung, is the word "administrative." The ordinary, common acceptation of this term is that it pertains to matters that are ministerial, administrative, or executive. An assessment might, with admissible propriety, imply a mere ministerial act; but the specification in the section of "laws in relation to the assessment of taxes" clearly enough indicates that in the judgment of Congress the word "administrative" was not sufficient to comprehend an assessment. The omission of the word "collection," which is so closely allied to and usually follows an assessment, would indicate that it was purposely omitted. In any event, the term "collection" is not expressed, and the court has no authority to read it into the statute.

There is another persuasive, if not conclusive, fact that it was not the mind of Congress that a suit could be maintained for the recovery of taxes growing out of a failure to put the required revenue stamps on a deed or other written instrument. Act April 12, 1902, c. 500, § 7, 32 Stat. 97 [U. S. Comp. St. Supp. 1907, p. 646], expressly repeals the act of 1898 requiring deeds of conveyance to be stamped and fixing the amount thereof, and it also expressly repealed section 29 of the act of 1898 respecting legacies and distributive shares of personal property. But this was qualified by the provision (section 8):

"That all taxes or duties imposed by section 29 of the act of June 13, 1898, and amendments thereof prior to the taking effect of this act, shall be subject, as to lien, charge, collection, and otherwise, to the provisions of section 30 of the act of June 13, 1898, and amendments thereof, which are hereby continued in force."

It then recopied said section 30, providing for the manner of assessments and the legal procedure to recover that tax by suit. The failure of Congress to make a like reservation in respect of the en-

forcement of the collection of taxes under the stamp act furnishes, to our minds, an irrefragable argument against the contention of the government.

Suggestive argument is furthermore furnished by reference to other statutes in pari materia respecting tax stamps to be placed on certain packages and articles. Take the act imposing a tax upon the sale, etc., of "filled cheese" (Act June 6, 1896, 29 Stat. 255, c. 337 [U. S. Comp. St. 1901, p. 2239]). Section 10 provides that, whenever any manufacturer sells or removes for sale any filled cheese upon which the tax is required to be paid by stamps without paying such tax, it shall be the duty of the Commissioner of Internal Revenue, within a period of not more than two years after such sale or removal, upon satisfactory proof, to estimate the amount of tax which has been omitted to be paid and to make an assessment therefor and certify the same to the collector. "The tax so assessed shall be in addition to the penalties imposed by law for such sale or removal." Section 17 provides:

"That all fines, penalties, and forfeitures imposed by this act may be recovered in any court of competent jurisdiction."

While the act for the enforcement of the payment of this stamp duty provides penalties and forfeitures, in order that that should not be regarded as the only remedy for the enforcement of the tax, the statute expressly declares that the tax shall be in addition to the penalties imposed by law for such failure, and consequently could be recovered by suit under said section 3213, supra.

Act June 13, 1898, c. 448, 30 Stat. 448, 468 [U. S. Comp. St. 1901, p. 2286], providing for the payment of taxes on mixed flour, declares that "the tax levied by this section shall be represented by coupon stamps," and that the Commissioner of Internal Revenue, for a period of not more than one year after such sale, consignment, or removal, is to estimate the amount of the tax which should have been paid, make an assessment therefor, and certify the same to the collector of the proper district. "The tax so assessed shall be in addition to the penalties imposed by this act for an unauthorized sale or removal," with a further provision "that all fines, penalties, and forfeitures imposed by the section specified may be recovered in any court of competent jurisdiction."

So Act Aug. 27, 1894, c. 349, 28 Stat. 562 [U. S. Comp. St. 1901, p. 2275], declares that, whenever any article upon which a tax is required to be paid by means of a stamp is sold or removed for sale by the manufacturer thereof without the use of the proper stamp, in addition to the penalties imposed by law for such sale or removal, it shall be the duty of the Commissioner of Internal Revenue, within a period of not more than two years after such sale or removal, to estimate the amount of the tax which has been omitted to be paid, and to make an assessment therefor upon the manufacturer or producer of such article, the amount to be certified to the collector, who shall demand payment of such tax, "and upon the neglect or refusal of payment by such manufacturer or producer, shall proceed to collect the same in the manner provided for the collection of other assessed taxes."

Act Aug. 2, 1886, c. 840, 24 Stat. 210 [U. S. Comp. St. 1901, p. 2230], imposed a tax on the manufacture and sale of oleomargarine. Section 6 of the act provided that:

"Every person who knowingly sells or offers for sale, or delivers or offers to deliver, any oleomargarine in any other form than in new wooden or paper packages as above described, or who packs in any package any oleomargarine in any manner contrary to law, or who falsely brands any package or affixes a stamp on any package denoting a less amount of tax than that required by law, shall be fined for each offense not more than one thousand dollars, and be imprisoned not more than two years."

Section 8, after declaring the amount of tax per pound to be paid by the manufacturer thereof, declares that:

"The tax levied by this section shall be represented by coupon stamps; and the provisions of existing laws governing the engraving, issue, sale, etc., relating to tobacco and snuff, as far as applicable, are hereby made to apply to stamps provided for by this section."

And section 9 declares that whenever there shall be a sale "without the use of the proper stamps, it shall be the duty of the Commissioner of Internal Revenue, within a period of not more than two years after such sale," etc., to estimate the amount of the tax which has been omitted to be paid, and to make an assessment therefor and certify the same to the collector, and "the tax so assessed shall be in addition to the penalties imposed by law for such sale or removal." The absence of such a provision in the act of 1898, to the effect that the penalties and forfeitures shall be in addition to the amount of the tax to be paid, in respect of the stamps required to be placed on written instruments and the like, is significant. In respect of the articles above enumerated the assessment of the tax was made upon the thing itself, and created an obligation in personam for the tax after the assessment made by the collector, as provided by the statutes.

There are numerous reported cases under the war revenue tax acts wherein suits were instituted to enforce the collection of taxes under other provisions imposing an assessment upon the thing itself or the fund arising in a particular way. As every lawyer who was in active practice during the period when the stamp acts of 1864 and 1866 were in force will recall, the holders of instruments required by the acts to be stamped met with serious defeats in litigation where the unstamped instruments were rejected in evidence. While some state courts held that the act could not thus determine for the state courts the question of the competency of such instruments as evidence, a great majority of the state courts affirmed the validity of the act in this respect, and the federal courts uniformly enforced it. Notwithstanding the fact that failures in certain instances to place on the designated written instruments the required stamps was brought to public attention, there is not a reported case showing that the government conceived that it had a right of action to recover such tax as a debt. And there is but one reported case under the war revenue tax in question where such right of action has been asserted, and that is the case of Fleshman v. McClain (C. C.) 105 Fed. 610. That was a suit instituted against the collector of internal revenue to recover back a tax alleged to have been illegally exacted, growing out of the failure of a stock-

broker to affix revenue stamps to certain memoranda of sales. The Circuit Court overruled a demurrer to the petition, on the distinct ground that as the stamp duty imposed by the statute was collectible through the sale of stamps and in no other prescribed mode, and the statute having prescribed what penalties might be enforced and recovered, attaching other penalizing incidents for failure to affix the stamp, the right to maintain the suit, therefore, could not arise by implication. This ruling was affirmed by the Court of Appeals of the Third Circuit in 106 Fed. 880, 46 C. C. A. 15. While Gray, Circuit Judge, who spoke for the court, held that the tax was not demandable on other grounds as well, he took pains to say that the grounds upon which the court below based its opinion were "equally controlling and decisive of the case in hand," and then proceeded to adopt the opinion of the district judge. He said, inter alia:

"Congress possessed the sole power to authorize this tax, and the sole power to prescribe the means by which it should be collected. No remedy by suit is given or implied by the act in question, nor is there to be discovered any authority to demand and accept money in lieu of the stamps that are required by law to be affixed. * * * A penalty for failure to obey this statutory requirement is provided, but I find no other remedy in the act."

It seems to us that a contrary view of the statute in question would be far-reaching in its consequences. There is no limitation imposed by the statute of 1898 limiting such suits, for the sufficient reason that the Congress, in our opinion, never for one moment conceived that the United States afterwards, when all the moneys had been realized under the statute for the exigencies of the war debt, and after it had repealed the statute, zealous inspectors or prowlers through ancient records might discover that some instrument had not been properly stamped, and the courts be flooded with suits for the recovery of the deficiencies. The tax sued for accrued in 1899. Mr. Stratton died in 1901. Under the laws of Colorado claims against estates of decedents are required to be presented for allowance within two years. This suit was not brought until after the lapse of about six years, and after the repeal of the statute and the calling in for cancellation by the Internal Revenue Department of all such stamps. The language of Mr. Justice Bradley, in Savings Bank v. United States, supra, would have a juster application to the situation of this suit:

"If the matter is left open so that any person or corporation may be prosecuted for taxes at any time, it leaves the citizen exposed to many hazards, and to the mercy of prying informers, when the evidence by which he could have shown his immunity or exemption has perished."

Finding no express authority in the statute for such a proceeding, we are of opinion that the judgment of the district court should be affirmed. It is so ordered.

HOOK, Circuit Judge (dissenting). The question in this case is whether the government is entitled to maintain an action for the recovery of stamp taxes imposed by the war revenue act of 1898. The government contends that it is because (a) the rule of Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80, still prevails, and (b)

by express provision in the act itself Congress adopted and applied to the taxes therein levied all means of collection then authorized by law, and among them was the remedy of plenary action. I am not persuaded that Savings Bank v. United States has been overruled, or that the court's full discussion and decision that a right of action existed independent of statutory provision are obiter dicta. The Supreme Court based its conclusion upon two distinct and independent grounds, either of which was sufficient: First, general principles of law, and particularly those respecting the attributes of sovereignty; and, second, a provision of the statute then in question applying to the particular case. It is manifest that what was said upon either of these cannot be held to be obiter. Any doubt about this would be dispelled by Union Pacific Co. v. Mason City Co., 199 U. S. 166, 26 Sup. Ct. 20, 50 L. Ed. 134, wherein Mr. Justice Brewer said:

"Of course, where there are two grounds, upon either of which the judgment of the trial court can be rested, and the appellate court sustains both, the ruling on neither is obiter; but each is the judgment of the court, and of equal validity with the other."

This language was used in affirmance of our own decision in that case (128 Fed. 230, 64 C. C. A. 348), wherein Judge Sanborn said:

"Where a court places its decision of the ultimate legal issue before it upon its decisions of two legal questions, which were pertinent to the issue, debated at the bar, and considered and determined in the opinion, the decision of either one of which is sufficient to sustain the determination of the ultimate issue, the decision of each of the two questions and of every pertinent legal question decided in reaching either decision has the binding force of an adjudication, and is not a mere obiter dictum."

It is equally clear that Savings Bank v. United States has not been overruled by Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197, or its authority impaired by that case, or by the earlier case of Lane County v. Oregon, 7 Wall. 71, 19 L. Ed. 101. In the Lane County Case it was decided that the statutes of Oregon required certain taxes to be paid in gold and silver coin and that the term "debts" used in the legal tender acts of Congress had no reference to taxes imposed by state authority. Nothing more was decided. In the Meriwether Case, which is relied on as a departure from the rule of Savings Bank v. United States, the question now before us, namely, whether the government can maintain an action for the recovery of taxes levied by it, did not arise at all, and was not decided. Justice Field did not deliver the opinion of the court. In fact there was no opinion by the court. There was merely a brief statement of legal conclusions upon the facts involved without an expression of the reasons which induced them. Justice Field, on behalf of himself and Justices Miller and Bradley, merely wrote a statement of the reasons which controlled their concurrence. Three other justices, Strong, Swayne, and Harlan, dissented. But, as already observed, the question before us was not there involved. It is a curious fact that Justice Miller, for whom Justice Field spoke in the Meriwether Case, delivered the opinion in United States v. Pacific Railroad, which I will presently advert to again, in which he held that the government could maintain an action

to recover a tax, and in referring to Savings Bank v. United States said:

"In that case the Supreme Court held that for the purposes of that collection and in some senses it was a debt; that the tax—which I presume was the same kind of a tax as this is—could be so collected."

In Savings Bank v. United States the court referred to the established practice in England of actions and suits in the nature of debt being maintained by the crown for the recovery of taxes and duties, though such remedies were unauthorized by statute. The court also referred with approval to decisions in this country holding that the government was entitled to such remedy. United States v. Lyman, 1 Mason, 482, Fed. Cas. No. 15,647; Meredith v. United States, 13 Pet. 486, 10 L. Ed. 258. In the Lyman Case will be found an exhaustive discussion of the question by Justice Story and full reference to the English authorities.

The rule of Savings Bank v. United States finds abundant support, were any needed, in other decisions of the national courts. In Stockwell v. United States, 13 Wall. 531, 20 L. Ed. 491, it was said:

"Debt lies whenever a sum certain is due to the plaintiff or a sum which can readily be reduced to a certainty—a sum requiring no future valuation to settle its amount. It is not necessarily founded upon contract. It is immaterial in what manner the obligation was incurred or by what it is evidenced, if the sum owing is capable of being definitely ascertained."

See, also, Chaffee v. United States, 18 Wall. 516, 21 L. Ed. 908.

United States v. Pacific Railroad, 4 Dill. 66, Fed. Cas. No. 15,983, was a suit in equity to recover the amount of taxes claimed to be due from the railroad company under the internal revenue law and to enforce the lien of the taxes upon its property. Mr. Justice Miller, with whom Judge Dillon was associated, said:

"A good deal of argument on both sides has been presented to us upon the question whether an action to recover taxes is an action of debt, and whether an obligation to pay taxes to the government is a debt. * * * In the view that all of us here take I think, however, that this discussion is immaterial. It is immaterial what you call the obligation of a citizen to pay his taxes. It is very clearly an obligation which may be enforced by the courts."

The doctrine of Savings Bank v. United States was recognized as controlling by Justice Clifford and the district judge who sat with him in United States v. Hazard, Fed. Cas. No. 15,337. In United States v. Cobb (C. C.) 11 Fed. 76, it was said that the settled rule that import duties were personal debts of the importer for which action would lie had been applied to the internal revenue acts. In United States v. Dodge, 1 Deady, 124, Fed. Cas. No. 14,973, the Meredith Case, supra, is cited as authority for a personal liability of importer and consignee for import duties, and in the Meredith Case the liability was sustained upon general principles of law. United States v. Tilden, 9 Ben. 368, Fed. Cas. No. 16,519, was an action to recover income taxes; but it involved the questions now before us—whether the remedies specified in the act imposing the tax were exclusive, and whether an action in debt would lie. Judge Blatchford, after an exhaustive discussion of the Savings Bank Case, said that it decided every question before

him. He also disposed of the contention that certain portions of the opinion in that case were obiter. United States v. Washington Mills, 2 Cliff. 601, Fed. Cas. No. 16,647, was an action to recover a revenue tax under the act of June 30, 1864. Justice Clifford said:

"Objection is also made to the right of the plaintiffs to recover in this case, because it is insisted that the remedy by distraint as given in the act of Congress is the exclusive remedy in the case. * * * Extended argument upon this subject, however, is unnecessary, as the question is regarded as settled by the decisions of the Supreme Court. The same objection was made in the case of Meredith v. United States, 13 Pet. (38 U. S.) 493, 10 L. Ed. 258, which was a suit for duties on imports. Duties due upon all goods imported, say the court in that case, constitute a personal debt due to the United States from the importer, independently of any lien on the goods or any bond given for the duties. * * * Assumpsit for taxes imposed under the acts of Congress providing for internal revenue is also the proper form of action."

In King v. United States, 99 U. S. 229, 25 L. Ed. 373, a case not involving the question before us, Justice Miller, in speaking for the court, said:

"The court held explicitly (in the Savings Bank Case) that the obligation to pay the tax did not depend on an assessment made by any officer whatever, but that, the facts being established on which the tax rested, the law made the assessment, and an action of debt could be maintained to recover it, though no officer had made an assessment.

In United States v. Erie Railway Co., 107 U. S. 2, 2 Sup. Ct. 83, 27 L. Ed. 385, the court adverted to what had been decided in the Savings Bank Case, and not with disapproval; also in United States v. Reading Railroad, 123 U. S. 113, 8 Sup. Ct. 77, 31 L. Ed. 138, and in United States v. Snyder, 149 U. S. 210, 13 Sup. Ct. 846, 37 L. Ed. 705.

There is no decision of the Supreme Court which, when rightly regarded, impairs the controlling authority of Savings Bank v. United States. The state courts are in conflict; the majority favoring the contrary doctrine. Judge Dillon, in his work on Municipal Corporations (volume 2, § 815), says:

"When the power to levy the tax is plainly given, the right to collect by suit should not be taken to be impliedly denied, unless the intention of the Legislature, that the special mode prescribed should be the only mode, appears with reasonable certainty."

Defendants rely upon Crabtree v. Madden, 54 Fed. 426, 4 C. C. A. 408, McClain v. Fleshman, 106 Fed. 880, 46 C. C. A. 15, and Fleshman v. McClain (C. C.) 105 Fed. 610. In the first of these it is said that taxes are not debts; but it should be observed that the case was an attempt to collect in the courts of one sovereignty taxes levied under the laws of another. The other case was an action to recover from a collector of internal revenue moneys alleged to have been illegally demanded and received by him under claim that they were due by virtue of section 6 of the war revenue act. To secure payment the collector threatened the plaintiff with "proceedings." The Circuit Court and the Court of Appeals of the Third Circuit held that the penalties specifically prescribed in the act were the sole means of enforcing payment and that there was nothing in the act giving or implying author-

ity "to demand and accept money in lieu of the stamps that are required by law to be affixed." The case of Savings Bank v. United States was not called to the court's attention, nor was reference made to section 31 of the act.

In both the Lyman and Meredith Cases, supra, holding that duties were recoverable by the government in an action of debt, significance was attached to the employment in the act imposing the duties of the phrase "there shall be levied, collected and paid." The same phrase is found in that part of the war revenue act now under discussion which relates to the documents, instruments, etc., of Schedule A. In other words, Congress enacted that there shall be "levied, collected and paid for and in respect of" those documents and instruments "the several taxes or sums of money set down in figures against the same respectively." I apprehend that it is a matter of no importance at all to the question before us that for convenience in the administration of the law provision was made that the person liable to pay the money was authorized to do so by purchasing, affixing, and canceling stamps That is an administrative detail quite useful in giving evidence of compliance with the law, but having no bearing upon the inherent nature of the tax or upon the remedies of the government for default in payment. Nor does it signify anything to say that a tax or other due, duty, or obligation is a debt, or that it is not a debt, unless we are given to know the text in which the term "debt" appears. Debt has a range of meaning from the narrowest to the widest, both in the law and out of it. The text determines. Thus, a tax may be a debt within statutes concerning bankruptcy, insolvency, and the administration of estates of deceased persons, and yet not so in those relating to set-off and legal tender. That in a broad sense a tax is a debt has been recognized ever since the days of Blackstone, who said:

"Whatever, therefore, the laws order any one to pay, that becomes instantly a debt which he hath beforehand contracted to discharge." 3 Bl. Com. 158.

Again, I think it is quite clear that actions at law as means of collecting the taxes levied were expressly adopted by the war revenue act. That act imposed increased taxes upon fermented liquors, taxes termed by Congress "special taxes" on the occupations of bankers, brokers, and the like, additional taxes on tobaccos and dealers and manufacturers thereof, taxes in respect of the documents, etc., mentioned in Schedule A, and the medicines, etc., in Schedule B. It also imposed what were termed "excise taxes" on those engaged in refining petroleum and sugar, also taxes on the transmission of legacies and distributive shares of personal property and upon various other subjects of taxation. Section 31 of the act is as follows:

"That all administrative, special or stamp provisions of law, including the laws in relation to the assessment of taxes not heretofore specifically repealed are hereby made applicable to this act."

I think that my associates are in error in saying that this section is under the heading "Legacies and Distributive Shares of Personal Property"; the inference suggested being that the section should be confined in its operation to the subject-matter of that heading. The er-

ror in this seems manifest from the reading of the section itself. By the very terms of section 31 pre-existing provisions of law were made applicable to the entire war revenue act, and not merely to the preceding sections 29 and 30, which deal with legacies and distributive shares of personal property. If this method of construction is applied to other portions of the act, it must with equal reason be said that section 28 comes under the heading "Excise Taxes on Persons, Firms, Companies and Corporations Engaged in Refining Petroleum and Sugar," and is so confined in its operation; yet section 28 merely imposes a tax on every seat sold in a palace or parlor car and every berth sold in a sleeping car. At the time of the passage of this act there had existed for many years a comprehensive scheme for the collection of taxes constituting a machinery thoroughly familiar to the officers charged with its operation and to a great extent illumined by the decisions of the courts and the rulings of administrative officials. Among those provisions is section 3213 of the Revised Statutes, under the title "Internal Revenue," which provides, among other things, that taxes may be sued for and recovered in the name of the United States in any proper form of action before any Circuit or District Court of the United States for the district within which the liability to such tax is incurred or where the tax debtor resides. This provision has been upon the statute books ever since 1866. The revenue act of 1864 (13 Stat. 236, c. 173) levied stamp taxes similar to those of the act now before us. Section 41 authorized actions for the recovery of fines, penalties, and forfeitures prescribed by that act. The act of 1866 (14 Stat. 110, c. 184) left the stamp taxes in force, but amended section 41 so that the right of action extended to fines, penalties, and forfeitures prescribed by any law and also to the taxes themselves. So, as the law stood in 1866, there were stamp taxes like that in the case before us, and the government might sue for their recovery. Some years afterwards the sections imposing the stamp taxes were repealed, but the remedy applicable to all taxes has remained to this day. Then in 1898 the war revenue act restored the stamp taxes. Can there be much doubt that without express provision the old general remedy for the recovery of all taxes applied to those imposed by the new act? Can there be any doubt whatever that to make the matter certain Congress inserted section 31?

When the bill that became the war revenue act was called up for consideration in the House of Representatives April 27, 1898, Mr. Dingley, who had charge of it, said, in explaining its scope and purport, that they had restored the adhesive stamp tax which existed from 1864 to 1872, placing it in large part on the basis of the old law as it stood in 1866, with certain additions (31 Cong. Rec. part 5, p. 4298). It seems to me altogether clear that by section 31 it was the intention of Congress to expressly adopt this old provision as part of the machinery for the enforcement of the taxes then levied. It made applicable to the act all "administrative provisions of law," and if section 3213, Rev. St., is not an administrative provision, what is it? When we speak of laws relating to the administration of estates, we include laws prescribing the methods and remedies for the collection of the as-

sets and their distribution and the powers of officers in connection therewith. When we speak of administrative provisions of law in respect of taxes, I think we naturally include all those granting powers to executive officials and providing ways and means for collection. That this result was in the mind of Congress I have little doubt. Mr. Dingley also said in explaining the general scope of the bill:

"These taxes have been selected, first, because we have the machinery for the collection of them now, and they can be collected with but slight additions to the force and with but slight increase of expense. We have selected them, also, because they were a source of revenue successfully seized upon during the Civil War," etc. 31 Cong. Rec. p. 4297.

These same ideas were repeated during the progress of the bill until it finally was enacted into law. I am unable to see why the repeal in 1902 of the provisions imposing taxes on the transmission of legacies and inheritances and the retention of the machinery for the collection of those already accrued is of significance in this case. The liability for accrued taxes in respect of conveyances still remained, and so did section 31 of the act, and also section 3213 of the Revised Statutes of 1878. Those sections were not repealed. Nor can I perceive any relevancy in other acts of Congress which provide that the taxes imposed should be in addition to fines, penalties, and forfeitures prescribed for violation of particular commands of those acts, unless it is claimed that the absence of such provision in respect of the stamp taxes of the war revenue act is an argument that Congress intended that the payment of a fine under that act should operate as a payment of the tax and a release from further liability. I think that a statement of this argument is its refutation. No imprisonment was prescribed in the war revenue act for failure to stamp, except when accompanied by an intent to evade the provisions of the act. No such intent is charged in this case. That some states deny the power of Congress to disqualify an unstamped instrument as evidence was known when the act was passed, and the inefficacy of such a disqualification as a coercive means was apparent.

So much for the "fines, penalties and forfeitures" which it is claimed constitute the sole means of insuring payment of these taxes. It would be strange that Congress should so intend when it was endeavoring to provide the government with means vitally necessary for the conduct of a war—that it should not give the government the simple remedies which every individual has for the collection of a debt. If Congress has power to enact that a tax shall be levied, collected, and paid, and it does so enact, there is nothing so unusual or oppressive in an action for the recovery of the tax that such remedy should be denied, and it should not be denied, unless it is evident that it was the legislative intent to limit the means of enforcement to the penal provisions of the act.