## ALLEN-WEST COMMISSION CO. *v.* PEOPLE'S BANK.

### Opinion delivered January 28, 1905.

1. APPEAL—QUESTION NOT RAISED BELOW.—In a suit by an alleged corporation a denial of plaintiff's corporate capacity, contained in the answer, will not be considered on appeal if the question was not insisted upon at the trial below.    (Page 44.)

2. CONTRACT — COMMISSION — USURY.— Under a contract binding the obligers to repay a note of $2,500, and to ship to the obligee 250 bales of cotton, or pay it a commission of $1.25 per bale on any number that their shipments during the year should fall short of the above number, the stipulation for a commission is in the nature of liquidated damages, and is not usurious.    (Page 44.)

3. CONTRACT—AMBIGUITY—CONSTRUCTION.—Where a contract is conflicting in its terms or doubtful in its meaning, it will be construed most strongly against the party who prepared it.    (Page 45.)

Cross appeals from Yell Circuit Court, Dardanelle District.

WILLIAM L. MOOSE, Judge.

Affirmed.

### STATEMENT BY THE COURT.

On the 25th day of June, 1897, the Allen-West Commission Company, of St. Louis, Missouri, entered into the following contract with the People's Bank and John B. Crownover, the cashier of that bank.

"For and in consideration of the Allen-West Commission Company, of St. Louis, Missouri, carrying over the amount now due them by us on open account or note, and certain further advances of money to be made by them to us during the spring and summer of 1897, at the expressly agreed rate of interest of eight (8) per cent. per annum, as evidenced by our note of even

date herewith, for twenty-five hundred dollars ($2,500), and due December 1, 1897, we hereby bind ourselves and guaranty to ship them, for sale on commission, during the season commencing September 1, 1897, and ending September 1, 1898, not less than ten (10) bales of cotton for each one hundred dollars ($100) so carried over for and advanced to us during the spring and summer of 1897, and, should we fail to ship them cotton in the above-named proportion, we hereby agree and bind ourselves to pay them a commission of one dollar and twenty-five cents ($1.25) per bale on any number of bales that our shipments to them may fall short of the above-named proportion; but our intention is to ship the cotton, and to make shipments as early and as rapidly as possible in the fall of 1897 as the circumstances will permit. And, should we be in their debt during and over the spring and summer following this year, we hereby further bind ourselves to fulfill to them a like obligation to this in regard to interest and shipment · of cotton or the payment of commissions.

"And it is expressly agreed and understood between us and the said Allen-West Commission Company that they shall have the exclusive right to apply the net proceeds of all cotton shipped and all payments of money made to them to the payment of all indebtedness which may be due now, or which may hereafter become due to them by us upon open account, or to the debt mentioned in this agreement, according to their view of the exigency of the case; that such application may be made in such a manner as they may elect, and that no application of such proceeds of sale or money to the payment of any debt in open account, which at any time may be due to them by us, shall impair, lessen or prejudice the debt named in this agreement.

"This guaranty is for two hundred and fifty bales of cotton.

"Witness our hands and seals, at Dardanelle, Ark., this 25th day of June, 1897."

The evidence shows that by custom of cotton dealers the cotton season of each year ended on the 1st day of September, and that a new season commenced on that day.

On the 1st day of September, 1897, the indebtedness of the bank and Crownover to the Commission Company was $343.58, on account carried over from the previous cotton year, and $2,500 on the note for money advanced under the contract.

During the season following the bank shipped the Commission Company under the contract 36 bales of cotton, and afterwards paid the note and the balance due on the account as above stated, but did not pay the $1.25 per bale of cotton which was called for by the contract upon each bale which it fell short of contract requirement. Afterwards the Commission Company brought suit in the circuit court to recover a balance of $495.54, which it claimed under the contract.

The defendants appeared, and answered, and denied liability. On the trial the cause was submitted to the circuit judge, without a jury, who found the following facts:

"That, under the contract exhibited as evidence in this case, plaintiff is entitled to commissions on only 214 bales of cotton for the season of 1897, 36 bales of cotton having been shipped under said contract, said commissions amounting to $267.50, which bears interest from September 1, 1898. at 6 per cent.

"The court also finds that there is due the plaintiff from defendants on account, as per exhibit No. 41, the sum of $63.98, with 8 per cent. interest from September 1, 1898, to this date. All of said sums amount to $382.95, less a credit of $15 admitted to have been paid thereon, leaving a balance of $367.95."

The court gave judgment accordingly. The plaintiff appealed, and defendants, after offering to pay the judgment, took a cross appeal.

*G. S. Cunningham, J. C. Hart, J. M. Moore, W. B. Smith,* for appellant.

A provision in the contract for the payment of the usual commissions for the sale of cotton as liquidated damages for failure to ship the cotton will not taint the contract with usury. 22 S. C. 367; 21 S. W. 946; 56 N. W. 383; 7 S. E. 224: 9 S. C. 344; 65 Ala. 511; 27 N. Y. 146; 16 Fed. 89; 10 S. E. 444; 74 Ga. 595; 78 Ga. 251; 6 Munf. 438; 4 So. 190; 64 Ala. 527; 37 S. C. 579; 64 Ala. 527. When a factor renders an account, it is the duty of the principal to examine it, and sanction or repudiate it within a reasonable time. Mech. Ag. § § 1021, 1023; 53 Ark. 160; 107 U. S. 333; 71 Fed. 58.

*John B. Crownover* and *J. W. & M. House,* for appellees.

A liability on a contract and on an account stated can not be joined in the same action. 2 Green. Ev. 127; 1 Johns. 34; 2 Tenn. Rep. 479; 26 N. W. 706. The bank can not be held responsible for a contract which is not authorized by its charter. 2 Herm. Estop. §§ 1176, 1177. The contract is usurious. 85 Ala. 384; 10 S. E. 444; 78 Ga. 257; 34 S. W. 405; 64 Ala. 532; 59 Ark. 366; 95 N. C. 468; 35 Oh. St. 107; 54 Ala. 646; 8 Neb. 48. This is not a suit on an account stated. 108 Fed. 723. The burden of proving that appellant was a corporation was upon appellant, since the answer denied its corporate existence. 2 Cook, Corp. § 637; 7 Wend. 540.

RIDDICK, J., (after stating the facts.) This is an action by a commission company, which sues as a Missouri corporation, to recover a balance which it alleges is due it from the defendants on a contract. The answer of the defendants expressly denied that plaintiff was a corporation, and they now contend that the judgment should be reversed, because there was no proof that plaintiff was a corporation. But the record shows that the defendants did not insist upon this point at the trial. The court did not refer to the matter in its findings, and was not asked to do so, and the motion for new trial filed by the defendants does not, as we think, raise any such question. Having ignored the matter in the trial below, and called for no ruling of the trial court thereon, it is too late to raise the question now.

The next contention on the part of the defendants is that the provision in the contract for the payment of $1.25 for each bale of cotton that the defendants failed to ship under their contract was a stipulation in regard to the interest to be paid for the loan or use of money, and rendered the contract usurious; but we can not concur in this contention. The whole evidence, as well as the contract itself, shows that the purpose of this contract, so far as the plaintiff was concerned, was to induce defendants to ship them cotton. The stipulation in reference to the payment of $1.25 per bale of cotton not shipped, in the event of the failure on the part of the defendants to carry out their contract in reference to the shipment of cotton, was in the nature of a stipulation for liquidated damages for breach of such contract. If defendants had

carried out their contract, there would have been no liability in that respect, and we think the circuit court was clearly right in holding the contract not to be usurious.

A more difficult question arises on the contention of the plaintiff that under the contract the defendants were required to ship one bale of cotton for each $10 of the balance of $343 carried over on account from the year 1896, as well as for the $2,500 advanced in 1897. This construction of the contract would require that defendants should ship 34 bales on the account and 250 on money loaned, making 284 bales in all, whereas the circuit court held that they were required to ship only 250 bales. The provisions of the contract on this point are contradictory. The first part of the contract plainly supports the contention of plaintiff, but the contract winds up with the statement that "this guaranty is for two hundred and fifty bales of cotton." While the original contract is not before us, a consideration of its language makes it seem very probable that it was prepared on a blank form in use by the plaintiff. It speaks of advances to be made during the "spring and summer" of 1897, when the contract was not executed until June, 1897, after the spring had passed. But this stipulation that the guaranty was for 250 bales was evidently an addition put in expressly to show the intention of the parties in reference to this particular contract, and for that reason must override the other and more general provisions of the contract.

As this contract was prepared by the plaintiff, we think that if there is conflict in its terms, or any reasonable doubt as to its meaning, those doubts should be resolved in favor of defendants, who may have been misled by the conflicting terms and provisions put in the contract by plaintiff. In other words, as plaintiff is to blame for any uncertainty in the meaning of this contract, it is right that the language used should be construed most strongly against it.

For these reasons, we are of the opinion that the finding of the circuit court as to meaning of this contract, both in respect to the number of bales to be shipped and the amount to be paid, was correct. On the whole case, finding no error, the judgment is affirmed.