## McFarlane v. York.

### Opinion delivered March 29, 1909.

Contracts—construction.—A contract prepared by a party to it, and for his benefit exclusively, will be construed as unfavorably against him as its terms will admit.

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; affirmed.

*T. G. Malloy* and *Palmer Danaher,* for appellants.

Where, at the time of the execution of a promissory note, the parties execute a written agreement specifying the manner

of payment, the note and agreement are to be construed together as one instrument. 4 Am. & Eng. Enc. of L., 2d Ed., 144. While ordinarily, since the contract stipulated that payments before maturity could be made in coal, the right to pay in coal would cease at the maturity of the note, yet, if appellants were prevented from this manner of payment by the failure or refusal of appellee to order the coal and to state the quantities and grade to be delivered, he cannot plead the maturity of the note and refuse to take the coal as payment. 7 Am. & Eng. Enc. of L., 2d Ed., 151; 4 Ark. 450; 8 Ark. 129; 30 Ark. 309. And appellants were under no duty to demand that the coal be ordered—it was appellee's duty to order. 9 Am. & Eng. Enc. of L. 201; 7 Id. 121; 4 Ark. 533; 6 Mich. 369; 9 Sawy. (U. S.) 24; 53 Ill. 526; 34 Ind. 319; 7 Cent. Rep. 420; 8 N. Y. 508; 33 Vt. 233; 3 Ia. 518; 54 Ill. 173; 36 Mich. 385.

*Taylor & Jones* and *Daniel Taylor,* for appellee.

McCulloch, C. J.   York sued McFarlane, Prior and McKelvey on a past due promissory note for $2200, and recovered judgment below for the amount of the note with interest. Defendants pleaded as a defense that under a contemporaneous written agreement with plaintiff they had the right to pay said note in coal, and that they had from time to time offered to deliver coal in satisfaction of the note, which plaintiff had refused to accept. The facts in the case are undisputed, and are in substance as follows:

At the time of the transaction in question, York was president of the Bluff City Lumber Company, of Pine Bluff, Arkansas, and McFarlane was president of the Greenwood Coal & Lumber Company, of Sebastian County, Arkansas. The Greenwood Coal & Lumber Company was indebted to the Bluff City Lumber Company in the sum of $10,000, and executed notes for the amount with interest. A separate contract was executed between the two companies wherein it was stipulated that said notes should be payable in coal, to be delivered from time to time to the Bluff City Lumber Company at prevailing prices at the time of such deliveries. It was agreed that the coal should be delivered when required by the Bluff City Lum-

ber Company and ordered by it, and that the notes should be renewed from time to time so as to extend the time of payment until they could be paid in coal under the contract.

York was also interested in the Greenwood Coal & Lumber Company as a stockholder, and the note in controversy was executed to him by McFarlane, with his co-defendants, Pryor and McKelvey, as sureties, in payment for his stock in said company. At the same time another contract was entered into between McFarlane, Pryor and McKelvey on the one side, and York, Rutherford and Samstag on the other—the last-named parties being also interested in the Bluff City Lumber Company—which said contract is as follows:

"That whereas R. W. McFarlane, T. B. Pryor and A. A. McKelvey have executed three notes in the sum of twenty-two hundred dollars, each payable respectively to J. B. York, J. F. Rutherford and C. J. Samstag, eighteen months after their date, May 25, 1906, at the Sebastian County Bank, of Greenwood, Arkansas; now, the makers of said notes, McFarlane, Pryor and McKelvey, are hereby granted the right and privilege to pay off said notes in coal at the prevailing price, set by the McAlester Fuel Company, less a commission of ten cents per ton, to be delivered f. o. b. cars Greenwood, Arkansas, to the order of the Bluff City Lumber Company and of such grade as ordered, but not to exceed in quantity one thousand tons per month, except by mutual consent; provided, however, that said McFarlane, Pryor and McKelvey shall not be permitted to begin the delivery of any coal under the terms of this agreement until the indebtedness provided by a certain written contract, this day executed, between the Greenwood Coal & Lumber Company and the Bluff City Lumber Company, and R. W. McFarlane, J. B. York, C. J. Samstag and J. F. Rutherford is fully paid off and discharged under the terms as provided in said written contract. All coal as furnished under the terms of this agreement shall go as a credit upon said notes, to be credited on each of said notes *pro rata* and equally.

"It is further agreed that the privilege herein granted to deliver coal as a credit upon said notes shall be at an end, and this contract shall terminate, upon the maturity of said notes, and whatever sum shall be due on said notes at their maturity

shall be payable in money according only to the terms of said notes."

The note to the Bluff City Lumber Company had not been paid in full at the time of the trial of this cause, and the plaintiff had refused to accept deliveries of coal in satisfaction of the note in controversy. All of these notes and contracts are conceded by both parties to have been contemporaneous in point of time, and that they should be treated together as parts of the same transaction. Viewing them in this light, have defendants the right to require the acceptance of coal in satisfaction of the note to the plaintiff prior to the satisfaction of the note to the Bluff City Lumber Company? Mr. McFarlane testified that if sufficient coal had been taken by the Bluff City Lumber Company under the contract both obligations could have been discharged by the delivery of coal before the maturity of the note to York.

It will be observed that the Bluff City Lumber Company was not required to accept any given quantity of coal within any stated period. The effect of the contract was to stipulate for payment of the notes in coal, to be delivered when needed by the lumber company, and required it to extend the payment of the notes until such time as they should be paid in coal as ordered. The contract provided no method for the payment of those notes except in coal, and no other method could have been resorted to except in the event of the refusal of the coal company to pay in coal. The lumber company was compelled, under the contract to accept payment in coal, but could choose its own time for accepting deliveries of coal. Of course, it should be read into the contract that the lumber company could not unreasonably postpone the delivery and acceptance of the coal; but there is no evidence in this case tending to show that such was done, or that the lumber company failed to order coal when it needed the same.

The supplemental contract with reference to the manner of paying the note in controversy expressly provides that the defendants should not be permitted to deliver coal under the terms of the agreement until the indebtedness of the coal company to the lumber company should be fully paid off and discharged; and it further provides that the privilege granted of paying the note in coal should be at an end at the maturity of

the note. The substance of this agreement was merely to grant the privilege to the defendants of paying in coal before the maturity of the note in the event that the indebtedness to the Bluff City Lumber Company should be discharged before that time. This contract being executed for the benefit of the defendants and merely as a privilege to them, and also being a contract prepared by them, it must be construed as unfavorably against them as its terms will admit. *Inglish* v. *Watkins,* 4 Ark. 199; *Leslie* v. *Bell,* 73 Ark. 338; *Allen-West Com. Co.* v. *People's Bank,* 74 Ark. 41.

Now, if we interpret the contract according to the literal meaning of its terms, the defendants have not brought themselves within the privilege granted by it, for it is conceded that the debt to the Bluff City Lumber Company has not been paid, and that the note in controversy is past due. Under the plain letter of the contract, their right to pay in coal has ended.

It is insisted, however, that the contract, when fairly construed, simply means that the right to deliver coal in satisfaction of this note should not interfere with the delivery of coal to the Bluff City Lumber Company; and that, as the defendants show that they could have delivered sufficient coal to satisfy this note before the maturity thereof without interfering with the performance of their contract with the Bluff City Lumber Company, the plaintiff had no right to refuse acceptance of the coal. There would be some plausibility in this argument if there were no other circumstances growing out of the relationship of the various parties which show that no such meaning was intended. York was the president of the lumber company, and it is manifest from the language of the contract that it was intended that coal should only be accepted according to the needs of the lumber company. He was willing to extend the time of payment of the debt to the lumber company until such time as that company could use enough coal at current prices to satisfy the debt. But, as to the note to himself, which represented the sale of his stock in the coal company, an entirely different method of payment was clearly provided in the contract. That was to be paid in money unless the lumber company should first order enough coal to satisfy its own debt from the coal company, and then sufficient coal be delivered in payment of this

note before its maturity. It can be readily seen that York might have been willing to postpone indefinitely the payment in coal of the debt to the lumber company, without being willing to extend the same privilege as to his own debt. The parties at least had the right to agree on different terms as to the payment of the two debts; and it is clear that they did so, for the form and substance of the two contracts demonstrate that they intended that the effect should be different. It is manifest, from the language of the contract, that no privilege was intended to be granted to the defendants with reference to payment in coal except that plainly stated in the contract itself. Courts do not make contracts for parties, but merely construe and enforce them.

We are of the opinion that the circuit judge was correct in his construction of the contract, and the judgment is affirmed.