## Modern Woodmen of America *v.* Miles.

[No. 22,082. Filed March 27, 1912. Rehearing denied June 6, 1912.]

1. Insurance.—*Contracts.—Construction.*—The rule that it is the duty of courts to ascertain the intention of the parties to a contract, and to give effect thereto, applies to insurance as well as other contracts, but where the intent of an insurance contract is doubtful, a liberal rule of construction obtains in favor of the insured. p. 108.

2. Contracts.—*Construction.—Words Given Ordinary Meaning.*— In construing contracts, words must be given their ordinary meaning, unless a contrary purpose is shown. p. 109.

3. Insurance.—*Application.—"Consulted."—"Treated."—"Ailment."* —Where a person stated to a physician that he was suffering with headache, but asked no questions and received no professional advice, information or instruction, and the physician gave to him a dozen trade tablets to relieve the headache, he did not thereby "consult" the physician, and was not "treated" for an

"ailment" within the meaning of a question in an insurance application as to whether he had been treated by or had consulted any physician in regard to personal ailment within the last seven years. p. 109.

4.    INSURANCE.—*Application.—Scope of Questions.*—When considered in connection with another question as to whether the applicant has ever had any local disease, personal injury or serious illness, a question in an insurance application, asking the applicant whether he has been treated by or consulted any physician in regard to personal ailment within the last seven years, has reference only to ailments of a substantial nature, and not to a mere temporary functional indisposition. p. 110.

5.    INSURANCE.—*Action on Life Policy.—Insanity.—Evidence.—Admissibility.—Record of Proceeding Before Justice of the Peace.*—In an action on a life insurance policy, where it had already been proven, without controversy, that the decedent was placed in an insane hospital shortly after November 23, 1906, the date on which he was adjudged insane, and that he remained there until his death, the record of the justice of the peace by whom he was adjudged insane, offered in evidence to show that decedent was declared insane on November 23, 1906, was properly excluded, since there was no controversy over that fact and the offer included incompetent matter. p. 112.

From Superior Court of Marion County (74,503) ; *P. W. Bartholomew*, Judge.

Action by Mamie D. Miles against the Modern Woodmen of America. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*Benjamin D. Smith, Charles F. Remy* and *James M. Berryhill*, for appellant.

*Henry Warrum*, for appellee.

MORRIS, C. J.—Suit by appellee against appellant on a benefit certificate issued by it on October 5, 1906, to appellee's husband, James H. Miles, providing for the payment of $2,000 to appellee on the death of her husband.

The certificate was issued on an application signed by decedent, on September 27, 1906. This application contained numerous questions to be answered by the applicant, and the answers were warranted to be full, complete and lit-

erally true, and it was agreed that the exact, literal truth of each of the answers should be a condition precedent to any liability on the part of appellant.

Appellant's answer to the complaint disclaimed any liability, because, it alleged, certain answers to questions in the application were untrue.

The issues were tried by the court, which made a special finding of facts, and stated its conclusions of law thereon. Judgment was rendered in favor of appellee for the full amount of the certificate.

The only error assigned here, and not waived, is the overruling of appellant's motion for a new trial. It is averred in this motion that the decision of the trial court was not supported by sufficient evidence, and was contrary to law.

The basis of the principal ground of contention here is question number fourteen, and the applicant's answer thereto (which we italicize), as follows:

"14. (a) Have you, within the last seven years, been treated by or consulted any person, physician or physicians in regard to personal ailment? *No.* (b) If so, give dates, ailments, duration of attacks, and name and address of each and all persons or physicians consulted or by whom treated. (c) Was recovery complete?"

The court found specially that the applicant had not consulted, nor been treated by, a physician for any personal ailment within seven years.

The uncontradicted evidence shows that in June, 1906, in the office of Doctor Seaton, in Indianapolis, the decedent told the doctor he had the headache, and the doctor gave him a dozen antikamnia headache tablets, for which he made a charge of fifteen or twenty cents. The doctor made no examination of decedent, and asked him no questions about the headache complained of.

The doctor testified as a witness for appellant. On cross-examination he said that frequently decedent came to his office to get medicine for other members of his family, and he

did not remember whether it was on one of such occasions that he complained of headache and received the tablets.

The doctor further testified that every one had headaches more or less, and anything that puts the circulation out of order will cause them.

Appellant claims that in view of the above facts, the decedent's answer to the above question relating to consultation with and treatment by a physician was false, and constituted a breach of one of the warranties of the contract.

Appellee's counsel contends there was no professional consultation nor treatment here, as reasonably contemplated by the parties to the contract; that the consultation or treatment must have been with reference to some substantial disorder, and not for a mere functional or temporary indisposition.

It is the duty of courts to ascertain the intention of the parties to a contract, and give effect to the ascertained intent. This rule applies to insurance as well as other contracts, with the qualification that in the former class, where there is doubt or ambiguity, a liberal rule obtains in favor of the insured. *Supreme Council, etc.,* v. *Grove* (1911), 176 Ind. 356, 96 N. E. 159, and cases cited; *Federal Life Ins. Co.* v. *Kerr* (1910), 173 Ind. 613, 89 N. E. 398, 91 N. E. 230, and cases cited; *German-American Ins. Co.* v. *Yeagley* (1904), 163 Ind. 651, 71 N. E. 897, 2 Ann. Cas. 275.

It is not, however, the province of the court to make or alter contracts, whether those of insurance, or of other character. *Ohio Farmers Ins. Co.* v. *Vogel* (1906), 166 Ind. 239, 245, 76 N. E. 977, 3 L. R. A. (N. S.) 966, 117 Am. St. 382, 9 Ann. Cas. 91. But where, from the language of an insurance contract considered as a whole, and viewed in the light of the surrounding circumstances, the intent is doubtful, this court has long recognized a rule of construction, liberal to the insured, because the parties do not deal on an

equal footing. *Federal Life Ins. Co.* v. *Kerr, supra,* page 618.

The record discloses that defendant is a fraternal beneficiary society, with many members, the certificate declared on being No. 1,308,230. It is manifest that the leading purpose of the organization is to furnish protection to persons of moderate means at the lowest possible cost. To accomplish this purpose, it follows that a greater degree of caution must necessarily be exercised in the acceptance of risks than might be required if the rates were higher, and in construing this contract the above feature is worthy of notice; but it cannot be conceded that the language of the contract evinces a purpose on the part of the insurer to set a trap for the unwary.

2. In construing contracts words must be given their ordinary meaning, unless a contrary purpose is shown.

Webster's Dictionary defines "Ail, v. t.", as follows: "To affect with pain or uneasiness, either physical or mental; to trouble; to be the matter with; to affect in any way;—used to express some uneasiness or affection, whose cause is unknown."

Substantially the same definition is found in the Century Dictionary. In the Universal Dictionary it is said of the word "ail": "It is generally used in interrogatories in which inquiry is made as to the unknown cause of some restlessness or trouble."

The word "consult" is defined as follows: "To ask advice of; to seek the opinion of; to apply or recur to, for information or instruction." Webster's Dictionary.

To "treat" a disease or patient means "manage in the application of remedies." Webster's Dictionary.

We do not believe that the decedent "consulted" Doctor Seaton within the ordinary meaning of that word.

3. He neither sought nor received any professional advice, information or instruction.

Was he treated for any "ailment", within the meaning of that word as used in question fourteen? The disorder complained of was headache. The cause of the uneasiness, or affection, was considered, both by the decedent and physician, as known; otherwise it must be presumed that there would have been at least some questions asked. In response to the complaint of headache, the doctor simply gave him some trade tablets. We are of the opinion that this did not constitute treatment for an ailment.

If, however, it did constitute treatment for an ailment, within the meaning of that word as used in the application, we are constrained to hold that the applicant's 4. answer to the question, under the evidence, did not constitute a breach of warranty.

Question numbered sixteen, in the application, affords some aid in the proper construction of the contract, and is as follows: "16. (a) Have you ever had any local disease, personal injury or serious illness? (b) If so, explain fully, giving dates (c) Was recovery complete?"

It will be noted that question sixteen calls for an answer from the applicant for any serious illness that he ever had. This would include any serious illness he had in the preceding seven years, for which he received no treatment, and concerning which he had consulted no one. Question fourteen covers only illness for which treatment was received or consultation had. On appellant's theory, illness not serious, untreated, and about which no consultation was sought, was not within the scope of questions fourteen and sixteen. It would appear that if question fourteen had contemplated treatment of mere functional disorders, question sixteen would not have been limited to seeking information relating to serious illness only.

But still more important considerations are presented by appellant's contention. The question calls for information covering a period of seven years. It was framed for practical use, to elicit substantial information from people of

average memory. Yet appellant was bound to know that it would be impossible for a person of average memory to give the dates and particulars of each treatment for, or consultation about, every temporary functional disorder he may have had during a seven-year period. Trade remedies for toothache, temporary headache, chafed skin, and temporary indigestion and like disorders, are handed over the counter by druggists to customers so frequently, and are used so generally, that few persons could truthfully answer such a question, if it embraced the above and like temporary and functional disorders.

While the authorities are not in harmony on this proposition, we are of the opinion that the correct rule applicable to questions of this character is that the disorder, to constitute a breach of warranty, must be of a substantial nature, and not a mere temporary, functional indisposition; and consequently the lower court did not err in its decision of this question. *North Western Mut. Life Ins. Co.* v. *Heimann* (1883), 93 Ind. 24, 30; *Standard Life, etc., Ins. Co.* v. *Martin* (1893), 133 Ind. 376, 33 N. E. 105; *Supreme Lodge, etc.,* v. *Foster* (1901), 26 Ind. App. 333, 59 N. E. 877; *Brown* v. *Metropolitan Life Ins. Co.* (1887), 65 Mich. 306, 32 N. W. 610, 8 Am. St. 894; *Modern Woodmen, etc.,* v. *Wilson* (1906), 76 Neb. 344, 107 N. W. 568; *Franklin Life Ins. Co.* v. *Galligan* (1903), 71 Ark. 295, 73 S. W. 102, 100 Am. St. 73; *Blumenthal* v. *Berkshire Life Ins. Co.* (1903), 134 Mich. 216, 96 N. W. 17, 104 Am. St. 604; *McCollum* v. *New York Mut. Life Ins. Co.* (1891), 124 N. Y. 642, 27 N. E. 412; *Woodward* v. *Iowa Life Ins. Co.* (1900), 104 Tenn. 49, 56 S. W. 1020; *Billings* v. *Metropolitan Life Ins. Co.* (1898), 70 Vt. 477, 41 Atl. 516; *Hoeland* v. *Western Union Life Ins. Co.* (1910), 58 Wash. 100, 107 Pac. 866; *Mutual, etc., Life Assn.* v. *Ogletree* (1899), 77 Miss. 7, 25 South. 869; *Crosby* v. *Security Mut. Life Ins. Co.* (1903), 86 App. Div. 89, 83 N. Y. Supp. 140; *Hubbard* v. *Mutual, etc., Life Assn.* (1900), 100 Fed. 719, 40 C. C. A. 665; *Owen* v. *Metropolitan*

*Life Ins. Co.* (1907), 74 N. J. L. 770, 67 Atl. 25, 122 Am. St. 413; *Rasicot* v. *Royal High Neighbors, etc.* (1910), 18 Idaho 85, 108 Pac. 1048, 29 L. R. A. (N. S.) 433, 138 Am. St. 180; *Modern Woodmen, etc.,* v. *Lawson* (1909), 110 Va. 81, 65 S. E. 509, 135 Am. St. 927.

On November 23, 1906, in a proceeding before a justice of the peace for Marion county, decedent was examined under the provisions of §3691 *et seq.* Burns 1908, §2842 *et seq.* R. S. 1881, for admission to the Indiana hospital for the insane. As a result of the examination, he was found to be insane, and a fit subject for admission to the hospital.

Appellant offered in evidence the entire record in such proceedings. Its object, as stated, was to show that decedent was adjudged insane on November 23, 1906, and that he had been suffering from symptoms of insanity for more than six months prior thereto. The offered record was excluded, and this action is claimed to be erroneous.

It had already been proven, without controversy, that decedent was placed in an insane hospital shortly after November 23, and remained there until he died. It was the evident purpose of appellant, in offering the record, to get in evidence the affidavits of the medical examiners, and the sworn statement of the citizen who instituted the proceeding. There was no error in excluding them. *Naanes* v. *State* (1896), 143 Ind. 299, 42 N. E. 609; *Hicks* v. *State* (1905), 165 Ind. 440, 75 N. E. 641; *Union Central Life Ins. Co.* v. *Hollowell* (1896), 14 Ind. App. 611, 43 N. E. 277.

While the justice's finding of insanity might have been admissible to prove that the applicant was adjudged insane at a particular time, there was here no controversy over that fact, and as the offer included incompetent matter, it was correctly refused.

Other questions are presented relating to the exclusion of offered evidence, but a consideration of them leads us to the conclusion that no reversible error was committed in regard

MAY TERM, 1912. 113

Wabash R. Co. *v.* Tippecanoe, etc., Trust Co.—178 Ind. 113.

thereto, and we deem it unnecessary to extend this opinion. by discussing them. Judgment affirmed.

NOTE.—Reported in 97 N. E. 1009. See, also, under (1) 25 Cyc. 739; (2) 9 Cyc. 578; (3) 25 Cyc. 816. As to what constitutes a consultation with, or attendance by, a physician within the meaning of an application for life insurance, see 17 Ann. Cas. 1203; 18 L. R. A. (N. S.) 362; (4) 25 Cyc. 812; (5) 25 Cyc. 931. As to the materiality of a negative answer by the applicant when asked if ever he had been treated by a physician, see 136 Am. St. 540.