## JONES ET AL. *v.* HEINZLE ET AL.

[No. 10,737.    Filed April 28, 1921.]

1. CORPORATIONS.—*"Indebtedness."*—*Scope.*—*Income and Excess Profits Taxes.*—Where a contract for the sale of stock in a corporation obligated the sellers to pay all indebtedness of every sort and character owing by the corporation, income and excess profits taxes assessed for a part of the year prior to the execution of the contract under a law enacted thereafter are not embraced within the term "indebtedness" as used in the contract.  p. 434.

2. CORPORATIONS.—*"Indebtedness."*—*Scope.*—*Income and Excess Profit Taxes.*—Where a contract for the sale of corporation stock obligated the sellers to pay all indebtedness owing by the corporation, excess profits taxes for prior years, under a statute existing before the execution of the contract, constitute indebtedness within its terms; the statute itself imposing a

tax with a fixed percentage being a sufficient assessment to determine the extent of the company's liability, and an examination of the company's books, by which was determined the amount due the government on account of such tax, having been made previous to the signing of the contract, and all accounts payable to the company being reserved to the sellers, so that it will be presumed that the parties used the term "indebtedness" in its broadest sense as intending to embrace all obligations of the company that were at the time imposed upon the company by law. p. 436.

From Warrick Circuit Court; *Marshall R. Tweedy,* Judge.

Action by Lawrence Jones and others against John F. Heinzle and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*A. J. Carroll* and *William L. Taylor,* for appellants.
*W. C. Mason* and *Gough & Gough,* for appellees.

NICHOLS, J.—This action is by appellants against appellees to recover certain amounts paid by appellants to the United States for income and excess profits taxes assessed against appellant Big Four Coal Company.

Prior to August 6, 1917, appellees owned forty-five out of a total of sixty shares of the capital stock of appellant coal company. On that date appellees sold said forty-five shares to appellants for $75,000. Such contract of sale was in writing and provided, among other things, as follows:

"The second parties bind and obligate themselves to pay all indebtedness owing by said Big Four Coal Company, of every sort and character, and cause to be released, of record, any mortgage or lien affecting the property of said Company, and the second parties shall receive and be entitled to collect, for their own use, all accounts payable to said Coal Company up to the date of this contract."

Subsequent to the date of the contract appellants paid to the United States certain amounts representing in-

come and excess profits taxes owing by said company on account of its earnings prior to August 6, 1917.

The substance of so much of the complaint as concerns the assessment and payment of such excess profits taxes is that there was assessed against the coal company by the United States taxes amounting to $8,969.08, on account of profits earned by said company during the year 1917; said taxes were assessed under the provision of an act of Congress, approved October 3, 1917, and entitled: "War Excess Profits Taxes," and which act dated back to and became effective as of January 1, 1917, as the beginning of the taxable period covered thereunder. The coal company earned during the year 1917, the total sum of $61,703.13, which was subject to income and excess profits taxes under the provisions of said act. Of said total amount earned by said company there was earned from January 1, 1917, to August 1, 1917, the sum of $27,645.19, which represented the profits made by the said company from January 1, 1917, to August 1, 1917, and which was retained by appellees under the terms of said contract. The Big Four Coal Company was compelled to, and did pay, on and prior to May 21, 1919, income and excess profits taxes on said $27,645.19, which said taxes so paid amounted to $3,969.92, which represented an indebtedness owing by said coal company on and prior to August 6, 1917, and which appellees were obligated to pay under the provisions of said contract, and which they have failed and refused to pay.

The government of the United States, prior to June 10, 1917, caused an examination to be made of such coal company's books and accounts for the years 1914, 1915, and 1916, and ascertained thereby that said coal company was indebted to the government on account of income and excess profits taxes for the year 1914,

$143.28; for the year 1915, $37.45; for the year 1916, $271.55, aggregating for the three years, $452.28, which sum represented an indebtedness of such coal company on and prior to August 6, 1917, for which appellees were liable under the contract aforesaid, but which they failed and refused to pay.

There was a demand for judgment for said sum of $3,969.92, with interest, and for the further said sum of $452.28, with interest. Appellees separately demurred to the complaint for want of facts, which demurrer was sustained, to which ruling appellants excepted, and failing and refusing to plead further, judgment was rendered against them from which this appeal.

We first consider the averments of the complaint as to the income and excess profits taxes in the sum of $3,969.92, which were paid by appellants and

1. which they seek to recover from appellees. The contract under which appellants claim the right of recovery is dated August 6, 1917, and, as has been heretofore pointed out, contains the provision by which appellees bound and obligated themselves to pay all indebtedness owing by said coal company of every sort and character. At the time this contract was entered into there was no law under which the tax aforesaid, amounting to $3,969.92, could be assessed, such law not having been passed until October 3, 1917, or about two months after the execution of the contract. Not only was there no assessment at the time of the contract, but there was no law authorizing such an assessment. We cannot reason that there could be any tax owing at the date of the contract when no lawful assessment therefor could be shown.

In *Gallup, Exr.,* v. *Schmidt* (1900), 154 Ind. 196, 217, 56 N. E. 443, it was held that it was not a tax at all until after the assessment was made. Before such as-

sessment the claim existed only in the right to tax. The mere inchoate right to tax is not an indebtedness of any sort or character.  See, also, *Lathers* v. *Keogh* (1888), 109 N. Y. 583, 17 N. E. 131.

In the instant case there was no statute authorizing the assessment of the tax involved until October 3, 1917.  As there was no tax owing at the date of such contract, the mere inchoate right to create the same could not constitute an indebtedness under the terms of the contract.  We are clear that there was no right of recovery as to the said item of $3,969.92.  Appellants, in their able brief, presenting their theory of the law as applied to the facts in this case, say that when the acts contemplated by the statute are done, in this case accumulating the profits, the indebtedness in favor of the government then arises for which a personal action of debt will lie against the taxpayer at the hands of the United States, and that the later filing of returns and assessment are merely evidentiary facts as to the amount of the taxes due.  Supporting their conclusion they cite *Savings Bank* v. *United States* (1873), 19 Wall. 227, 22 L. Ed. 80, from which they quote as follows:  "Nor is there anything in the objection that the taxes for which judgment has been recovered in this case had not been assessed.  No other assessment than that made by the statute was necessary to determine the extent of the bank's liability.  An assessment is only determining the value of the thing taxed, and the amount of the tax required of each individual.  It may be made by designated officers or by the law itself. In the present case the statute required every savings bank to pay a tax of five per cent. on all undistributed earnings made, or added during the year to their contingent funds.  There was no occasion or room for any other assessment.  This was a charge of a certain sum

upon the bank, and without more it made the bank a debtor."

They quote also to like effect from *United States* v. *Chamberlin* (1911), 219 U. S. 250, 31 Sup. Ct. 155, 55 L. Ed. 204, but each of these cases involved a

2. statute that was in force at the time the funds to be assessed were in hand. In each of these cases, it was held that no other assessment than that made by the statute was necessary in order to determine the extent of the liability. But the instant case is to be distinguished from those cases in this, that at the time of the contract in the instant case the statute, which within itself was sufficient to constitute an assessment, was not in existence. As we read the cases cited by appellant, however, it seems to us that they are directly in point as to the excess profits taxes for the years 1914, 1915, 1916, aggregating $452.28, which amount appellants seek to recover. An examination had been made of the coal company's books June 10, 1917, or about two months before the contract involved was entered into, and by such examination it was ascertained that the coal company was indebted to the government for said preceding years in the total sum of $452.28. Said indebtedness grew out of a statute that was in existence before the contract was entered into, and, as held in the cases relied upon by appellant, the statute itself constituted a sufficient assessment to determine the coal company's liability. Having reached this conclusion, we hold that the said sum of $452.28 constituted an indebtedness against the coal company at the time the contract was entered into for which appellees were liable. Such being the case, though the complaint did not state a cause of action as to the said sum of $3,969.92, it did state a cause of action as to the said sum of $452.28.

We are not unmindful of the Indiana authorities,

as well as authorities elsewhere, holding a tax is not an ordinary debt.

The case of *State* v. *Mutual Life Ins. Co.* (1910), 175 Ind. 59, 85, 93 N. E. 213, 223, 42 L. R. A. (N. S.) 256, states the rule as follows: "Taxes levied or imposed by the State are not debts in the ordinary acceptation of the term so as to make them bear interest under the laws of the State."

In the dissenting opinion, of Wiley, J., in the case of *Cullop* v. *City of Vincennes* (1904), 34 Ind. App. 667, 672, 72 N. E. 166, the statement was made that it is well-settled law of this state that a tax is not an ordinary debt, and again in *Thornburg* v. *Buck* (1895), 13 Ind. App. 446, 448, 41 N. E. 85, it is stated that a debt in the technical sense is money due or owing on a contract, express or implied; but in *Hornbeck* v. *State* (1904), 33 Ind. App. 609, 71 N. E. 916, it is stated that a debt in a broad and general sense is whatever one owes, and this is sustained by many authorities. Anderson's Law Dictionary says: "The condition of owing money; also the amount owed." The Imperial Dictionary says a debt is that which is due from one person to another. Bouvier's Law Dictionary says: "Any claim for money." Rap. & L. Law Dict. says: "In the strict sense of the word a debt exists when a certain sum of money is owing from one person (the debtor) to another (the creditor)." Webster's Dictionary says: "That which is due from one person to another—that which one person is bound to pay to another." The word may be held to include liabilities of every sort. *Commercial Bank* v. *Weinberg* (1893), 25 N. Y. Supp. 235, 70 Hun. 597. Other definitions are found in some of these authorities, but these are given to show that, in addition to a technical meaning that an indebtedness is an obligation growing out of contract, the word has a broader, more general and

common meaning that it is anything due, or owing. Indebtedness of every sort and character must surely come within the definitions above given, as including any amounts at the time owing, and the company was certainly at the time owing excise taxes in the sum of $452.28, which if not an ordinary debt, was certainly a debt of some sort.

The case of *Board of Com'rs., etc.* v. *Harrell* (1897), 147 Ind. 500, 509, 46 N. E. 124, involved a special tax levied by the board of commissioners upon all property of the taxing district for the purpose of building a gravel road, and the court, on p. 509, said that such special tax levied by the board of commissioners "is not an indebtedness of the township or townships composing such taxing district, but *is an indebtedness of the taxpayers.*" (Our italics.)   The obligation of the contract involved is "to pay *all indebtedness owing of said Big Four Coal Company,* (Our italics) of every sort and character."

We do not need to determine as to whether there is any conflict in the Indiana cases above mentioned, for the taxes involved are federal special taxes, and by federal treasury regulations an income tax as in this case, is a status of a debt due to the United States, and it is a regulation of such department that persons receiving property charged with such an indebtedness must answer for it.

The rule is thoroughly established in federal practice that an action of debt may be maintained in the name of the United States for the recovery of any sum due for internal revenue taxes. *Billings* v. *United States* (1914), 232 U. S. 261, 34 Sup. Ct. 421, 58 L. Ed. 596; *United States* v. *Chamberlin, supra; Savings Bank* v. *United States, supra.* It has also been held that under such a statute that *indebatatus assumpsit* was a proper form of action to be brought by the United

States for the recovery of the taxes. *United States* v. *Minneapolis Threshing Mach. Co.* (1915), 229 Fed. 1019, and see Black, Income and Federal Taxes (4th ed.) §435, for a statement of the general principles above presented.

Where the tax with a fixed percentage, such as that imposed by the act involved in this case is so definitely described in the statute that its amount can be ascertained and determined, on evidence by the court, suit will lie without an assessment of the tax. *United States* v. *Grand Rapids & I. R. Co.* (1915), (D. C.) 239 Fed. 153.

With these authorities holding that special federal taxes are an indebtedness that may be collected by suit in an action for debt, if there still be any doubt as to the interpretation that should be given the contract as to the said sum of $452.28, the rule of law, that where terms used have a doubtful meaning, or more than one meaning, then the court must look to the surroundings for aid in giving them the proper construction, must be called upon. In this case at the time of the contract involved these items of excise taxes had been definitely determined by an examination of the books of the company, and the parties to the contract, both appellant and appellee, must be presumed to have known of the existence of such unpaid excise taxes and that under the law the Government had a right to collect them. Appellees, by the contract were receiving all of the earnings of the company up to the date of the contract, and were agreeing in consideration thereof that they should pay all indebtedness of every sort and character. We must, therefore, presume that the parties used the term indebtedness in its broadest sense as intending to embrace all obligations of the company that were at the time legally imposed upon the company by law, without reference to any restricted meaning or use of the term

indebtedness. We must hold that the parties intended by the terms of the contract that the appellees should pay said sum of $452.28, as an indebtedness of the company, and the demurrer to the complaint, should, therefore, have been overruled. The judgment is reversed, with instructions to the trial court to overrule the demurrer to the complaint, and for further proceedings.

Batman, J.—Dissents with opinion.

Remy, C. J.—Dissents.

### DISSENTING OPINION.

BATMAN, J.—I fully concur in the opinion adopted by a majority of the court, with reference to the item of $3,969.92 mentioned in the complaint, but cannot agree with the opinion as to the remaining item of $452.28, alleged to have been assessed as income and excess profit taxes for the years 1914, 1915 and 1916. It appears from the averments of the complaint that appellees sold their stock in the Big Four Coal Company to appellants, and that the contract in suit was executed in connection therewith. In the absence of such contract the vendors would not have been liable for any of the obligations of said company, but the purchasers would have taken the stock, with the burden resting on the company to discharge its own obligations. Therefore, appellees, as such vendors, are required to pay only such obligations of the company as are imposed on them by a fair and reasonable construction of said contract. The leading purpose in construing any contract is to ascertain the intention of the parties from the language employed. And, having ascertained such intent, it is the duty of the court to give it effect. *Gwinn* v. *Wright* (1908), 42 Ind. App. 597, 86 N. E. 453; *Straus* v. *Yeager* (1911), 48 Ind. App. 448, 93 N. E. 877; *Carmichael* v. *Arms* (1912), 51 Ind. App. 689, 100 N. E. 302; *Modern Woodmen, etc.* v. *Miles* (1912),

178 Ind. 105, 97 N. E. 1009. It is a rule of construction, applicable to contracts, that—"the terms of every written instrument are to be understood in their plain, ordinary, and popular sense, unless they have, generally, in respect to the subject-matter, as by the known usages of trade, or the like, acquired a peculiar sense, distinct from the popular sense of the same words; or unless the context evidently points out that, in the particular instance, and in order to effectuate the immediate intention of the parties, they must be understood in some other and peculiar sense." The *Evansville, etc., R. Co.* v. *Meeds* (1858), 11 Ind. 273; *Beard* v. *Lofton* (1885), 102 Ind. 408, 2 N. E. 129. In the instant case, there is nothing in the contract itself to indicate that the term "indebtedness" found therein, was used in any sense different from its plain, ordinary and popular meaning, and there are no averments in the complaint to the effect, that such term had acquired a particular meaning by usage, distinct from its popular sense, and that it was used in said contract in that acquired sense. Under these circumstances we must determine the meaning of the contract in question by giving such term its plain, ordinary and popular meaning. *Straus* v. *Yeager, supra; Carmichael* v. *Arms, supra; Modern Woodmen, etc.* v. *Miles, supra; Wallace* v. *Morgan* (1864), 23 Ind. 399; *Gladstein* v. *Levine* (1912), 49 Ind. App. 270, 97 N. E. 184; *Rastetter* v. *Reynolds* (1903), 160 Ind. 133, 66 N. E. 612.

The courts throughout the country, in considering the plain, ordinary and popular meaning of the term "debt," or "indebtedness," and in determining whether taxes and assessments were properly included within such meaning, have spoken frequently in that regard in no uncertain words. Thus it has been held that taxes are not debts; that debts are obligations for the payment of money, founded upon contract express or implied,

while taxes are imposts, levied for the support of the government, or some special purpose authorized by it; that the consent of the taxpayer is not necessary to the enforcement of the latter, as they operate *in invitum;* that the nature of taxes are not affected by the fact that in some states an action for debt may be instituted for their recovery, as the form of procedure cannot change their character. *Meriweather* v. *Garrett* (1880), 102 U. S. 472, 26 L. Ed. 205; *Peter* v. *Parkinson* (1910), 83 Ohio St. 36, 93 N. E. 197, Ann. Cas. 1912A 751; *Hanson* v. *Franklin* (1909), 19 N. D. 259, 123 N. W. 386; *Georgia Railroad & Baking Co.* v. *Wright* (1905), 124 Ga. 596, 53 S. E. 251; *In re United Button Co.* (1906), (D. C.) 140 Fed. 495; *State, ex rel.* v. *Dix* (1911), 159 Mo. App. 573, 141 S. W. 445; *Hecox* v. *Teller County* (1912), 198 Fed. 634, 117 C. C. A. 338; *United States* v. *Chamberlin* (1907), 156 Fed. 881, 84 C. C. A. 461, 13 Ann. Cas. 720; *Danforth* v. *McCook* (1898), 11 S. D. 258, 76 N. W. 940, 74 Am. St. 808; *State, ex rel.* v. *Trust Co.* (1908), 209 Mo. 472, 108 S. W. 97; *City of Shreveport* v. *Gregg & Ford* (1876), 28 La. Ann. 836; *Jones* v. *Gibson* (1885), 82 Ky. 561; *City of Carondelet, etc.* v. *Picot* (1866), 38 Mo. 125; *North Mo. R. Co.* v. *Maguire* (1872), 49 Mo. 490; *Bailies* v. *City of Des Moines* (1905), 127 Iowa 124, 102 N. W. 813; *Hewitt* v. *Traders' Bank* (1897), 18 Wash. 326, 51 Pac. 468; *Lane County* v. *Oregon* (1868), 7 Wall. 71, 19 L. Ed. 101; *State* v. *Chicago, etc., R. Co.* (1906), 128 Wis. 449, 108 N. W. 594; *Freeholders, etc.* v. *Weymouth* (1902), 68 N. J. Law 652, 54 Atl. 458; *Borough* v. *Fidler* (1892), 147 Pa. 532, 23 Atl. 799; *City of Rochester* v. *Gleichauf* (1903), 82 N. Y. Supp. 750, 40 Misc. Rep. 446; *City of N. Y.* v. *McLean* (1901), 68 N. Y. Supp. 606, 57 App. Div. 601; *Gatling* v. *Commissioners* (1885), 92 N. C. 536, 53 Am. Rep. 432; *Rochester* v. *Bloss* (1906), 185 N. Y. 42, 77 N.

E. 794, 7 Ann. Cas. 15; *Sonnesyn* v. *Akin* (1903), 12 N. D. 227, 97 N. W. 557. Numerous other cases might be cited of like import, but more are unnecessary. The above cases abound in many significant expressions such as the following: "Taxes are not debts in the ordinary sense of that word." *Hecox* v. *Teller County, supra;* "It (a tax) does not establish the relation of debtor and creditor between the taxpayer and the state." *Peter* v. *Parkinson, supra;* "A tax is not a debt in the ordinary sense in which that term is used." *Danforth* v. *McCook, supra;* "It is correctly contended * * * that taxes are not debts in the ordinary sense of the word." *City of Shreveport* v. *Gregg & Ford, supra;* "But taxes have never been held by elementary law writers or courts as debts in the ordinary meaning of the word." *Jones* v. *Gibson, supra;* "Debt does not, either in its ordinary or technical sense, include taxes. * * * Debt is a much more specific term than demand or obligation and it has a well defined meaning in law." *Bailies* v. *City of Des Moines, supra;* "Taxes are not strictly a debt." *In re United Button Co., supra;* "Taxes are enforced contributions upon persons or property levied by authority of the state for the support of the government. They are not 'debts' in the ordinary sense of the word." *Hewitt* v. *Traders' Bank, supra;* "The greatest of English elementary writers upon law, when treating of debts in their various descriptions, give no hint that taxes come within either; while American state courts of the highest authority, have refused to treat liabilities for taxes as debts, in the ordinary sense of that word, for which an action of debt may be maintained." *Lane County* v. *Oregon, supra;* "Taxes are, in legal contemplation, neither debts nor contractual obligations, but are in the strictest sense of the word, exactions." *Freeholders, etc.,* v. *Weymouth, supra;* "Taxes are not debts in the ordinary sense of

that term." *Gatling* v. *Commissioners, supra;* "The tax, however, does not become a debt within the meaning of such word as commonly used." *Rochester* v. *Bloss, supra.* "Blackstone defines 'debt' as a sum of money due by certain express agreement. * * * The word 'debt,' standing alone, in its usual and ordinary sense, imports an obligation resting upon contract. This is its common meaning. * * * The word 'debt' however, also has an uncommon meaning, covering all kinds of obligations." *Sonnesyn* v. *Akin, supra.*

As disclosed by the cases cited above, many courts, in support of their declarations that a tax is not a debt, point out the fact that the essential characteristics of a debt are not present in a tax. An author on the subject of taxation has said that the courts have almost universally so held. 27 Am. & Eng. Encyc. of Law, 580. In some instances the court cite the fact that a tax, unlike a debt, does not arise by contract, is not subject to set-off or attachment, does not bear interest, unless it is so provided by statute, and is not assignable as a debt. *Peter* v. *Parkinson, supra; Bailies* v. *City of Des Moines, supra; City of Camden* v. *Allen* (1857), 26 N. J. Law 398; *Crabtree* v. *Madden* (1893), 54 Fed. 426, 4 C. C. A. 408; *Morris* v. *Lalaurie* (1887), 39 La. Ann. 47, 1 South. 659; *Perry* v. *Washburn* (1862), 20 Cal. 318. Judge Cooley in his work on taxation, based on a number of authorities cited, states that taxes "do not draw interest, as do sums of money owing on contract; but only when it is expressly given. They are not the subject of set-off, either on behalf of the state or the municipality for which they are imposed, or of the collector, or on behalf of the person taxed, as against such state, municipality or collector." Cooley, Taxation (2d ed.) 17. Such facts, it is held, clearly show that a tax is not a debt. In this connection we note that the majority opinion refers to the case of *Savings Bank* v.

*United States, supra,* as sustaining the view that a tax is a debt, but in the later case of *United States* v. *Chamberlin, supra,* the court, in referring to said former case said: "In view of the express provision of the statute providing for such a tax by suit, it ought not to be said that it was the mind of the court in the Savings Bank case to overturn the hitherto generally recognized rule of law *that a tax is not regarded as a debt."* (My italics.) That case, therefore should not be taken as running counter to the almost unbroken line of decisions, which hold that a tax is not to be regarded as a debt, either in the legal signification, or common acceptation of that term.

Turning from the decisions in other jurisdictions, to those of our own state, I find the following significant expressions, bearing on the subject under consideration: "A tax is not an ordinary debt. It is not founded upon contract, express or implied. It flows from the exercise of sovereign power, and is imposed without the consent of the debtor. It is enforceable summarily, by distress or sale, and without exemption or relief from valuation laws." *Gallup* v. *Schmidt, supra.* "A debt, in a general sense, arises out of an express or implied promise made by one person to another to pay a sum of money." *Heinl* v. *City of Terre Haute* (1903), 161 Ind. 44, 66 N. E. 450. "It is essential to the idea of debt that an obligation should have arisen out of a contract, express or implied." *State, ex rel.* v. *Hawes* (1887), 112 Ind. 323, 14 N. E. 87; *Quill* v. *City of Indianapolis* (1890), 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681. "Taxes levied or imposed by the state are not debts in the ordinary acceptation of that term, so as to make them bear interest under the general interest law of the state." *State* v. *Mutual Life Ins. Co., supra.* "It is the settled law of this state that a tax is not an ordinary debt. It is not founded upon contract, ex-

press or implied." *Cullop v. City of Vincennes, supra.* (Dissenting opinion.)

In the case of *State v. Chicago, etc., R. Co., supra,* the court in considering whether a tax is a debt in the ordinary sense of that term said:

"There is some confusion in judicial expressions as to whether an ordinary tax is a debt. Because it is a liability, it will be found sometimes spoken of as the former, no idea of the contractual element necessary to one strictly so called being in mind. As a rule, whenever any court has been required to decide whether such a tax involves such element the decision has been in the negative. One might easily be misled by reading the different expressions even of the same court on the subject, if the circumstances under which the varying expressions were used are not taken into consideration. For examples, in (certain named cases) an ordinary tax is in each instance spoken of as a debt, the precise nature of the liability, however, not being involved. In *In re Assignment of Riddell* (1896), 93 Wis. 564, 67 N. W. 1135, such question was directly involved and the conclusion was that such taxes are not debts in the ordinary sense."

The case of *Board of Com'rs., etc.* v. *Harrell* (1897), 147 Ind. 500, 46 N. E. 124, cited in the majority opinion, is a fair illustration of the class of cases mentioned in the above quotation, as leading to confusion. In that case the court was considering whether a tax, levied for the payment of bonds issued for the construction of a free gravel road, was an indebtedness of a township, and in holding that it was not, spoke of it as an indebtedness of the taxpayers, when evidently in the light of other decisions of the same court, rendered not only before but after that date, a more accurate expression would have been, that such a tax was a *liability* of the taxpayers.

The opinion of the majority of the court calls attention to the fact, that the word debt in a broad and general sense includes whatever one owes, any claim for money, liabilities of every sort, etc., and cites the definitions given by lexicographers and the decision of a court outside of this state in support thereof. Such fact, however, ought not to have a controlling influence in determining the meaning to be given the word indebtedness in the contract in suit, since it must be apparent from the numerous decisions cited, that any such meaning is the unusual or uncommon meaning of such word, and there is nothing in the contract to indicate that it was used in such broad and general sense. Moreover, where the courts of a state have determined the ordinary and usual meaning of a word, as has been done in this state respecting the word debt, persons using the same in contracts executed therein, will be presumed to have so employed it, where the contrary does not appear. *Stéphani* v. *Catholic Bishop, etc.* (1878), 2 Ill. App. 249. Hence the fact that lexicographers, or a court in an isolated case, may have ascribed a wide range of meaning to the word "indebtedness" can be of no material aid in determining what meaning should be given the same in the contract in the instant case.

Liabilities arise from three different sources, viz.: from contracts, from torts, and from assessments, but as appears from the authorities cited above, only the first of these three classes of liabilities are commonly known and designated as debts. It is reasonable to assume that if it had been the intention of the parties to the contract in suit, that appellees should pay all the liabilities of the Big Four Coal Company, regardless of their source, that they would have used that term in expressing such intention, or some similar term equally inclusive, such as obligations, instead of the term in-

debtedness, which has a more restricted meaning as ordinarily used. These general terms of broad significance are in as common use, and their meaning is as well understood, as the word indebtedness, and the use of that term, instead of one of the others suggested, cannot be satisfactorily explained, except by assuming that their meaning was too broad and inclusive to express their agreement. This appears the more reasonable in view of the fact that the contract involves a large consideration, and bears evidence of careful preparation. Under these circumstances it will be presumed that the words used to express the intention of the parties were selected with discrimination. *Schweinburg* v. *Altman* (1911), 145 App. Div. 377, 130 N. Y. Supp. 37. However, it is suggested that the phrase "of every sort and character," following the word "indebtedness" in the contract in suit, discloses an intention to enlarge the meaning of such word beyond its ordinary significance. We cannot adopt this view, as it would be unreasonable to assume that the parties, having avoided the use of the words of broad significance suggested above, which ordinarily would be used to express the intention for which appellants contend, that they employed the word and phrase quoted above for such purpose. Besides the rule *ejusdem generis,* which courts employ as an aid in ascertaining the meaning of statutes and contracts, forbids the adoption of the suggestion stated, as under it, such phrase must be restricted in its meaning to the first class of liabilities named above, to the exclusion of either of the other two classes. But if it could be said that the word "indebtedness" followed by the phrase "of every sort and character," leaves the meaning of the contract, as to what liabilities appellees were to pay, in doubt, such fact would not aid appellants. It appears on the face of the contract, that the provision in question was inserted therein for the

benefit of appellants, and therefore must be construed as having been worded and inserted by them, and if ambiguity exists, must be construed against their interest. 13 C. J. 546; *McFarlane* v. *York* (1909), 90 Ark. 88, 117 S. W. 773; *Capital City Bank* v. *Hilson* (1910), 59 Fla. 215, 51 South 853; *American Fuel Co.* v. *Interstate Fuel Agency* (1919), (C. C. A.) 261 Fed. 120; *Lechner* v. *Strauss* (1912), 50 Ind. App. 414, 98 N. E. 444.

For the reasons stated, I cannot concur in the opinion of the majority of the court, but hold that the court below did not err in sustaining appellees' demurrer to the complaint, and that the judgment ought to be affirmed.

Remy, C. J., concurs.